UNITED STATES DISTRICT
SOUTHERN DISTRICT OF FLORIDA

31 FOSTER CHILDREN on behalf
of themselves and all other
Children in Florida Foster Care

CASE NO.:

Plaintiffs,

v.

CIV-KING

COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF

JEB BUSH, as Governor of the
State of Florida, KATHLEEN KEARNEY,
as Secretary of the Florida
Department of Children and Families,
and District Administrators
CHUCK BATES, JOHN AWAD, ESTER TIBBS,
LEE JOHNSON, LYNN RICHARD, DON DIXON,
ROBERT MORIN, FRAN GIBBONS, PAUL BROWN,
PHYLLIS SCOTT, CHARLES AUSLANDER,
CHRISTINE DAVENPORT, PATRICK HOWARD,
SUE GRAY and BUDDY CLINE,

CLASS ACTION

MAGISTRATE JUDGE
O'SULLIVAN

Defendants.
_____/

Plaintiffs, 31 Foster Children, on behalf of themselves

and all other Children in Florida Foster Care, sue Defendants

Jeb Bush, as Governor of the State of Florida, Kathleen

Kearney, as Secretary of the Florida Department of Children

and Families [DCAF], and District Administrators Chuck Bates,

John Awad, Ester Tibbs, Lee Johnson, Lynn Richard, Don Dixon,

Robert Morin, Fran Gibbons, Paul Brown, Phyllis Scott, Charles

Auslander, Christine Davenport, Patrick Howard, Sue Gray and

Buddy Cline, and allege:



## I. INTRODUCTORY STATEMENT

1. This is an action for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act including 42 U.S.C. §12133.

2. This suit addresses the failure of the Defendants to follow the law relating to the children in Florida foster care, and the harm caused by the resulting abuse and neglect of the children by the Defendants.

## II. JURISDICTION

3. Because this is an action in which the matter in controversy arises under the constitution and the laws of the United States, this Court has jurisdiction over this controversy pursuant to 28 U.S.C. §§1331 and 1343.

4. This action arises under 42 U.S.C. §1983 and the Americans with Disabilities Act to redress the Defendants' deprivation under color of state law of the rights, privileges and immunities secured to Florida's foster children by the Constitution and laws of the United States and Florida.  The federal rights sought to be redressed are guaranteed by the Fourteenth Amendment to the United States Constitution.

5. This Court also has jurisdiction pursuant to 28 U.S.C. § 2201 and 2202, as Plaintiffs also seek a judgment

2

declaring Plaintiffs' rights and injunctive and other equitable relief.

### III. PLAINTIFFS

6. Approximately 14,000 children are presently in foster care in Florida; the children's lengths of stay and excess lengths of stay are set forth on the attached schedule [Exhibit A].

7. The named plaintiffs are acting on behalf of themselves and of the children abused, neglected, and financially exploited by Florida's foster care system, including the 14,000 foster children currently in the Defendants' custody.

8. Plaintiff Ashleigh Abbott is in foster care in Broward County DCAF/District 10.  Now 5 years old, she has been illegally held in "emergency shelter" since March 1998, more than 2 years, without having been adjudicated dependent as to her custodial parent, who has denied any abuse or neglect of her.  Although she has significantly deteriorated in DCAF's custody and is now functioning at only 50% of her capacity, the defendants continue to use her as a pawn in battling with her custodial parent and have stated they will keep her in foster care, in an unsuitable detrimental institutional setting condemned by her dependency court

3

guardian ad litem, until her parent "gives up, gives out or gives in". She brings this action through her next friend Brenda B. Shapiro.

9. Plaintiffs Two Forgotten Children are two Dade County DCAF/District 11 sisters held by the State of Florida in foster care since 1986, when they were 4 and 2 years of age. They have never been placed for adoption. In fact, despite adoption being recommended several times, they are still not even available for adoption because the Defendants', contrary to law, have made no efforts to terminate the parental rights of their non-present father.

During their 14 years in Florida's foster care system, the girls have been subjected to rapes, beatings and neglect. The older girl was given syphilis when she was nine years old. They have been wrongly separated from each other. Their minds have been damaged by years of psychotropic medications administered with the State's approval for the convenience of their caretakers. They have been locked up for years needlessly in restricted, locked facilities and held there as virtual captives, to the financial gain of the facilities and DCAF.

The older girl, now 18, has a permanent mental disability severe enough that in approximately 1994 DCAF

applied for and obtained federal disability benefits for her, then intercepted the resulting federal funds as representative payee; thereafter DCAF then wrongly denied her access to the independent living program because of State-caused disabilities and the fact she had no savings due to DCAF's taking her federal SSI funds.  Although of mixed Hispanic descent, the girls were labeled and treated as Black children, and discriminated against in their multiple placements and DCAF's denial of timely access to real permanency.  The girls are acting through their guardian ad litem Brenda B. Shapiro.

10. Foster Child #93-15027 is an 11-year-old Dade County child who has languished in foster care for years.  Separated from her siblings for no reason, she finally had parental rights terminated, and was then placed for adoption with a licensed foster family, the father of which already had a criminal record for sexually abusing children.  The child lived nearly 12 months in that house, subjected to unspeakable abuse before criminal charges were instituted against the foster father.  A suitable adoptive parent has now been found, but the Defendants are capriciously and arbitrarily refusing to let the child have a real family.  The child is separated from her siblings, is devastated and is suffering greatly.

She brings this action through her guardian ad litem Kristi Kassebaum.

11. Plaintiff 14-year old Ashley Rhodes-Courter spent nine years in Florida's foster system, being moved 14 different times. She was periodically separated from her brother, Plaintiff J.J. No proper diligent search was timely done for a suitable relative placement, although it was discovered years after the fact that an appropriate aunt was willing to care for Plaintiff Ashley. Conversely, one of Ashley's placements was with an unsuitable relative who had previously had his own children taken from him.

DCAF District 6/Hillsborough County DCAF kept Ashley for nearly a year at an over-crowded foster home where the foster children were subjected to beatings and horrible sadistic abuse, including hot sauce applied to the tongue, faces dunked in the toilet bowl and kept there until the child gasped for breath, and to beatings and ridicule. Plaintiff J.J. spent even longer at the same overcrowded abusive house. When the child abuse "Hotline" was called, DCAF ignored the abuses, exonerated the foster parents and kept the home open, allowing the foster parents to keep custody of children who had been removed from their own families for neglect or for much less serious abuse than that being inflected in the

6

foster homes.  Ashley brings this action through her adoptive parents and next friends Gay and Philip Courter; J.J. brings this action through his next friend Mary Miller.

12. Plaintiffs Two Sisters from Manatee County have been involved with Florida's foster care system since 1986, when they were 4 and 2.  Their father's parental rights were terminated in 1987; their mother was having trouble making ends meet as a recently divorced single parent with few job skills.  Instead of providing services, DCAF convinced her to instead surrender the girls so they could be adopted and have a better life.

The adoptive parents handpicked by DCAF were abusive beyond imagination.  The girls were subjected to innumerable beatings and other bizarre torture, including being tied to the bed by wrists and ankles, being made to sleep on concrete surrounded by a brick cage at night, and punished if the two girls spoke to each other or any one else.  DCAF's Hotline received several calls reporting the abuse, including calls in 1990, 1993, 1994 and 1997 before finally taking the girls back into foster care in March 1997 after a total of 10 years of what DCAF itself called egregious abuse.  Since then, DCAF chose not to even attempt to seek a permanent family for the girls, moving them from one unsuitable placement to another.

In 1999, a guardian ad litem located the girls' natural mother who asked to adopt the girls.  Although DCAF had no other options [and was not even looking for an adoptive placement for the girls], DCAF initially objected to either of the girls even having contact.  When the girls asked to be adopted by their mom and step-dad, DCAF fought strenuously against the adoption for months but provided not even a single written reason to support its objection.

The official DCAF permanency goal for the younger girl continued for more than three years to be the oxymoronic "long term foster care", clearly contrary to law.  Also contrary to law, there was no case plan in effect for the younger girl for several months, even though DCAF was obligated to provide proper case management services and received federal and state funds for case management services it was not providing.  In December 1999, DCAF said a case plan would be done after the December judicial review; it was not submitted until June 1, 2000, a clear violation of state and federal law.

For several months DCAF also failed to provide the children and their counsel with copies of court papers, further violating the girls' due process rights.  It is not known at this time what has happened to the room and board funds the federal government is paying DCAF to keep the

younger child in long term foster care - the natural mom and step-dad are taking no money.  The girls bring this action through their next friend Donald Hadsock.

13. Natalie and Nathan are two young Monroe County children taken by the defendants into foster custody and held there more than six months [200 days] without any adjudication of dependency ever being entered.  During their stay as foster children, the caretakers provided by defendants neglected the children and failed to provide proper care.  The defendants held the children in foster placements with persons unknown to them although perfectly suitable relatives were available and willing to care for the children during any time out of home care was necessary.  This is another case where the defendants and their department used the children as leverage to try to make parents admit to abuse or neglect which did not happen, ignoring the illegality of such conduct and the unfair violation of the children's rights resulting from such tyrannical conduct.  The children bring this action through their parents Carrie and Nick Nowatney.

14. Plaintiff Omar D. is an Orange County/District 7 youngster who was taken from his mother years ago, due to alleged neglect, and placed with an unsuitable adoptive parent who routinely neglected the child and his siblings.  A flight

attendant, the adoptive mother frequently left the children alone with no adult supervision.  When home, she often abused the child and his siblings.  DCAF failed to properly investigate multiple Hotline calls about the abuse before finally removing the child and his siblings from the home.

In the next foster home, the child was again subjected to multiple incidents of abuse and neglect.  When DCAF finally decided to do a proper investigation, they found that the foster father had a criminal background involving child abuse and had had that background before being licensed as a foster parent.  DCAF also found DCAF District 10 licensed the foster father anyway and neglected to advise DCAF District 7 of the foster father's criminal child abuse background when the family had relocated from Broward County to Orlando.  DCAF District 7 had placed the already abused and traumatized child in the foster home without any background check or risk assessment of it. The child brings this action through his next friend Betty J.

15. Plaintiff P.D.B. is a 16-year-old Palm Beach County foster child under DCAF supervision from 10 days of age until age 10, then in foster care since age 10.  Since age 10, he was moved more than 18 times, and has been denied a good

permanent family.  He brings this action through his guardian ad litem Kathleen Fayette.

16. Plaintiff R.C. is a 13-year-old Palm Beach County child kept by DCAF in a temporary shelter for more than 12 months.  She brings this action through her mother.

17. Plaintiffs T.C. and C.C. are Palm Beach County DCAF/District 9 children placed by DCAF in a abusive foster home in Belle Glade, where they were beaten and kept in a closet; additionally plaintiff C. C. was sexually abused. DCAF "investigated" its foster parents, covered up the wrong-doing and kept the foster home open.  The children bring this action through their mother V.J.

18. Plaintiff foster child M.I. is two years old.  He was neglected in a foster home in Palm Beach County, and had to be taken to the hospital before receiving treatment or care.  He brings this action through his mother B.C.

19. District 9 Plaintiff S.M. is a 16-year-old who has spent virtually her entire life in foster care.  The child and her brother had been placed in one foster home for two years, and had bonded to the good, loving foster parents.  When the natural parents' rights were terminated and the children became available for adoption, DCAF illegally denied the foster parents' request to adopt the children.  DCAF then

11

separated the child from her brother, and both children continued to be held in foster care limbo.  DCAF ignored recommendations of the child's guardian ad litem and instead required her to be adopted by an unfit, inappropriate mother whom DCAF no longer licenses as a foster parent.  The child has continued to be placed in an ever increasing number of placements and was held unlawfully for 12 <u>months</u> [rather than 72 <u>hours</u>] at the crisis unit of a residential treatment center before being officially placed in a residential treatment center in June 1999, where she remains to this day, generating still more fees for the facility.  She brings this action through her guardian ad litem.

20. Plaintiff C.W. is a 12-year-old child who has been held in a temporary shelter in District 9 since May 1999, even though the Defendants know the placement is inappropriate for her and for the other children there.  She brings this action through her mother.

21. Plaintiff T.M. is a 14-year-old foster child wrongly separated from her siblings.  District 9 DCAF has placed her in several different unsuitable placement including places where she has been neglected and places where she was not wanted.  In one foster home she was one of 8 children DCAF placed in the house, violating the 5-child maximum.  Her

attempts to be properly placed were ignored, and DCAF took her to a home where the foster mother had already told DCAF the child was not wanted, and left her there after dark, only to be told to leave by the foster mother, even though the neighborhood was not a safe one. She brings this action through her mother L.M.

22. Plaintiffs L.S. and L.S. are two foster children in the Defendants' custody in Palm Beach County. Born in 1991 and 1993 respectively, the girls have been in foster care since March 1995. DCAF did not perform a proper diligent search to locate suitable caretakers and incorrectly told an uncle that relatives are not allowed to adopt. DCAF placed the girls in an inappropriate place. DCAF ignored complaints about the placement and kept the children there for years even though it was known to be a more appropriate placement for teenage girls rather than young children. The girls were traumatized by DCAF's inappropriate handling of their case, and by the several years delay in being moved to a good permanent family. They bring this action through their guardian ad litem Barbara Wilt.

23. Plaintiff H.S. is a 16-year-old Palm Beach County foster child. In 1996, when he was 12 years old, his mother passed away and his father turned him in to DCAF, claiming he

was not the child's biological father.   DCAF has neither
located any natural father nor any good permanent substitute
father.   He has been moved from place to place, missed more
than one month of school, having spent many days in DCAF's
office rather than in school.   He has inadequate clothing, and
has been completely neglected by Defendants.   Contrary to law,
DCAF has not provided him with a guardian ad litem.   He brings
this action through his personal attorneys, Michelle Hankey,
Barbara Burch, John Walsh and James Walsh.

24. Plaintiff foster child L.G. was taken into Palm
Beach County foster care as a young infant. The child was
neglected and failed to thrive in an inappropriate foster
house. By age 13 months, the child was still not on solid food
and was kept in her crib the majority of her time. The
pediatrician could not effectively treat the child because the
DCAF workers who took the child to the doctor's office
provided no information about the child.   Although an adoptive
home was located, DCAF has not yet provided the child with
permanency. She brings this action through her guardian ad
litem Al Mann.

25. Plaintiff T.G. is a 9 year old District 9 foster
child.  She has been in four different foster houses in the
past three years.  She has seen her four siblings only once

during the past year. In her current DCAF selected placement, the children sleep in a room attached to a converted garage. There is no air conditioning in the children's room, although the foster parent sleeps in the main house which does have air conditioning. The child is not being fed properly. In a prior placement, she was subjected to physical abuse by the foster mother, including having her arm twisted behind her back and her nose twisted. She brings this action through her guardian ad litem Al Mann.

26. Plaintiff J.G. is a 14 year old Ocala boy who spent several years in Hillsborough foster care. He and his sister Plaintiff H.B. were taken into foster care when DCAF claimed they were being neglected because their parents' house was messy. Their parents would not capitulate to DCAF's charges and were ultimately exonerated. Meanwhile, the children were held for years in abusive, neglected foster houses.

Plaintiff J.G. was sexually abused; both Plaintiffs were subjected to bizarre punishments. DCAF either ignored Hotline calls reporting the abuse or conducted an investigation designed to exonerate the foster parents and keep the overcrowded abusive house open. Because the house was kept open, even more children suffered even more abuse, all

because of the Defendants' tolerance of foster system abuse. These Plaintiffs bring this action through their parents.

27. Plaintiff Lauren C. will be two years old in July 2000. While in foster care, she was placed in an abusive, neglected foster placement in Flagler County where she was subjected to repeated abuses. The traumatic brain injuries inflicted upon this child by DCAF's designated foster parents have left her partly paralyzed and with impaired vision and speech. She brings this action through her attorney ad litem Rhoda Goodson.

28. Plaintiff DCAF/District 1 Walton County sisters Jennifer and Beronica are two foster children now 17 and 15 years of age held in foster care for more than 3 years and harmed and abused in at least three placements. When they reported the abuse, they were not listened to. When they ran from the still abusive foster homes, pick up orders were issued because DCAF had put these children in a situation where they had to choose between being abused or violating a court order that required them to stay where DCAF put them. They bring this action through their next friend Brenda B. Shapiro.

29. Plaintiffs R.B. and R.B. are 13 year old District 9 Twins. They have been stuck in foster care since 1997.

Suitable relative caretakers in other states were never
contacted.  One of the children has a cleft palate and other
medical needs which the Defendants have neglected to do
anything about.  They bring this action through their
attorney/guardian ad litem John Walsh.

## IV. DEFENDANTS

30. Defendant Jeb Bush is the Governor of the State of
Florida, the head of the Executive Branch of government and
the person responsible proper operation of the foster system
and for the hiring and continued employment of Kathleen
Kearney, Secretary of the State of Florida Children and
Families Services ["DCAF"], Defendant Bush is sued in his
official capacity.  By law, Defendant Bush is responsible for
supervising Defendant Kearney.  He is also responsible for the
proper administration of DCAF, proposing a proper budget for
DCAF to the legislature and assuring that DCAF operates in
conformity with the law and State plans submitted to the
federal government allowing state qualification for funding
under Title IV of the Social Security Act, under the Child
Abuse Prevention and Treatment and Adoption Reform Act, and
the Adoption and Safe Families Act.

Defendant Bush is also responsible under State law for
seeing that DCAF complies with the mandatory provisions of

Chapter 39, Florida Statutes and Chapter 65c of the Florida Administrative Code relating to dependency cases, foster care and termination of parental rights, and is responsible for ensuring that DCAF protects the federally protected civil rights of the foster children in state care.  Additionally, since his inauguration in January 1999, Defendant Bush has personally directed the operation of Florida's foster care system and dictated the actions to be taken by the other defendants in the operation of Florida's foster care system in a manner contrary to law and proper, competent professional standards.

31. Defendant Kathleen Kearney is Secretary of the Department of Children and Families of Florida.  She is sued in her official capacity.  Under Florida law, Defendant Kearney is responsible for supervising, directing, organizing, planning, administering and executing the functions of DCAF and for seeing that DCAF performance is in compliance with federal law to qualify for appropriate funding under Title IV, and for operating the foster care system in such a way as to protect the lives, safety, health and rights of the children held by Florida in foster care. In this role, she serves at the pleasure of and subject to the direction of Defendant Bush.

32. Defendants Bates, Awad, Tibbs, Johnson, Richard, Dixon, Morin, Gibbons, Brown, Scott, Auslander, Davenport, Howard, Gray and Cline are the District Administrators of DCAF's districts 1 through 15, respectively. They are sued in their official capacities and under color of state law. They serve at the pleasure and direction of Defendants Kearney and Bush; each serves as the local official in charge in each of the 15 DCAF districts to see that the children in Florida foster care are free from harm and properly cared for while in state foster custody. They also have the legal duty to see that the foster care system is operated in accordance with federal and Florida law. They are each also obligated to see that proper professional standards and judgment are exercised in determining and providing for the protection, familial and permanency needs of the children in the temporary custody known as foster care, and to see that the system is not operated recklessly or with deliberate indifference to the needs, safety, lives and rights of Florida's foster children.

33. At all times and in all respects relevant to the claims herein, Defendants Bush, Kearney and District Administrators were acting in their official capacities and under color of state law.

## V. CLASS ACTION ALLEGATIONS

34. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23(a) and 23 (b)(2) of the Federal Rules of Civil Procedure.  The class consists of all children currently in the custody of the Florida foster care system.

35. Every child in foster care is directly impacted by the Defendants' deficient operation of Florida's foster care system.  Florida's foster care system has been described as the worst for children in America by the National Coalition for Child Protection Reform.  As operated, the Florida foster care system is the single biggest abuser, neglecter and exploiter of children in Florida.  Children who have the misfortune of being taken into Florida's foster care system routinely have their rights trampled upon and are likely to be harmed by the experience.

36. This action qualifies as a class action pursuant to Rule 23(b) in that:

a. There are presently approximately 14,000 children currently in Florida foster care, including more than 6,300 Black children.  Many of these children have been in foster care longer than the legally established limit. Many of these children are being held in emergency

shelter status for longer than 30 days without having

being adjudicated dependant. The named plaintiffs are

representative of all foster children who have been

abused, neglected or financially exploited in foster care

and all children currently in foster care, regardless of

whether they have been adjudicated dependent.

b. The Plaintiff class of children in Florida foster

care is so numerous that joinder of all members is

impracticable.  Even joinder of the more than 6,300 Black

children is impracticable. Further, throughout the state,

there are hundreds of cases where parental rights should

have been terminated but termination proceedings have not

been timely begun by DCAF.  Additionally, thousands of

children have been improperly assigned a permanency goal

of long term foster care, which damages the children by

denying them good permanent families and allowing the

children to be further financially exploited by the

Defendants and their providers, and increases the risk of

further abuse and neglect.

c. With each passing day, the number of children who

have been too long in foster care increases.

d. Each of the class members is in the physical

custody and legal custody of DCAF and is and has been

adversely affected by the overcrowding in foster care and by DCAF's failure to comply with the foster care time limits, and its obligation to provide proper services to those it keeps in care.

e. The questions of law and fact involved in this case are common to the class and the claims of the plaintiffs are typical of the claims of the other class members.

f. The representative parties will fairly and adequately protect the interest of the class.  They bring this action through their well-qualified representatives, including guardians ad litem, parents and next friends. They are represented by geographically diverse, competent counsel including board certified civil trial lawyers with experience in class action litigation as well as child advocacy.

g. The Defendants have acted and refused to act on grounds generally applicable to all members of the class, making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

h. The questions of law or fact common to members of the class will predominate over any other questions

affecting only individual members.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy. There are questions of law and fact common to the class which include:

1. All members of the class are in Defendants' legal and physical custody;

2. All members of the class are currently being denied or are at risk of being denied their constitutional right to safety, receipt of care consistent with competent professional judgment and the protections afforded to them under Florida law and the Florida Administrative Code as a result of Defendants' placement of them in overcrowded, unsupervised foster homes, shelters, and other residential facilities with other unscreened, foster children;

3. Defendants have subjected all members of the class to imminent and substantial risk of harm due to the neglectful, abusive, violent, and/or dangerous conditions in Florida's foster care system;

4. Defendants have failed to monitor the care of

all members of the class and to ensure by proper caseworker visitation that their placements are safe;

5. Defendants have subjected all class members to the substantial risk of truancy and its associated harms;

6. Defendants have subjected all members of the class to the risk of being allowed to remain on the street after they have left their placements and their location is known to Defendants thereby exposing them to the dangers of homelessness and a lack of supervision;

7. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making injunctive relief with respect to the class as a whole an appropriate remedy; and

8. Defendants have treated and continue to treat children of color differently, with resulting harm.

i. To the extent Defendants are the legal custodian of these children, they have an inescapable inherent conflict of interest and are not in a position to bring this action against the Defendants or the Department itself on behalf of these children.

j. All members of the class seek to vindicate
[through 42 U.S.C. § 1983 and, to the extent pertinent,
the Americans with Disabilities Act] rights, privileges
and immunities that are secured to them by Title IV of
the Social Security Act, the Child Abuse Prevention and
Treatment and Adoption Reform Act, and the related
Florida foster care program, the Americans with
Disabilities Act, The Adoptions and Safe Families Act and
the Eighth and Fourteenth Amendments to the United States
Constitution.

## VI. STATEMENT OF FACTS

37.   Under federal law, Florida's foster care system must
provide services to effectuate the child's return to the
natural parents in not more than 12 months, if such
reunification can be done safely and consistent with the
child's best interests.  If reunification cannot be
accomplished, the foster care system is obligated to petition
for termination of parental rights and, simultaneously,
concurrently locate and approve a qualified adoptive family.

38. As of January 13, 2000, dependent children stay in Florida foster care for an average of 34.1 months nearly three times the legal limit established in federal and state law.

39. Children in Florida foster care generate funds for the Florida foster care system and for outside contract providers to whom the Defendants, inappropriately, give total control and deference over a child's length of stay with a particular provider.

40. The Defendants are not operating Florida's foster care system properly, for the appropriate purpose of providing children with the requisite good permanent homes as quickly as possible. The Defendants routinely hold children in emergency shelter care longer than the maximum of 2 months allowed by law and excessively overuses an oxymoronic "permanency" goal of long term foster custody, which keeps the children in the system rather than finding adoptive families. This overuse of long term foster custody maximizes federal revenue for DCAF and its allies, job security for DCAF workers and rewards contract providers with payments for the foster children who – contrary to law – are not moved toward real permanency and who suffer harm while being held as virtual hostages by the Defendants.

41. Defendants operate the foster care system with a much greater tolerance for child abuse committed by their own foster parents, group home parents and institutional personnel who benefit financially from the children's stay in foster care than they show toward children neglected or abused outside the system by their own parents.

42. The Defendants know Florida's foster care system operationally discriminates against Black children in several ways.  The Defendants know Florida's foster care system treats Black children differently in taking them into foster care, moving them to permanency and keeping them in the system. There is a disproportionate number of Black children taken into foster custody, a disproportionately longer time before Black children become available for adoption, and longer lengths of stay in foster care for Black children.  The Defendants know and have known for years that Florida's foster care system treats children believed to be Black differently than other children.

43. The Defendants know that the longer children are in foster care, the more likely they are to be abused by their DCAF-approved custodians or others in the DCAF-selected placements.

44. The Defendants know the longer a child is in foster care, the more placements and schools the child will be moved to, and the more harm the child is likely to suffer.

45. The Defendants also routinely violate the due process rights of foster children not providing them a guardian ad litem or attorney and by engaging in ex parte proceedings with the dependency court, by not serving court papers on the child or the child's attorneys, by excluding the child [and the child's attorney, if there is one] from permanency staffings, by not moving the children to permanency timely, and by subjecting foster children to abuse, neglect, bizarre punishments, over-crowded, dangerous placements, separation from their siblings, excessive placement and school changes, and an unacceptable high risk of harm arising from the Defendants' unlawful manner of operating the Florida foster care system.

46. The Defendants have acknowledged the Adoptions and Safe Families Act requirement that children are not to remain in foster care longer than 12 months, yet have admitted that the vast majority [72.3%] of children in Florida's foster care system have been there longer than 12 months and have indicated they are not complying and will not comply with the 12 month legal limit.  Exhibit A sets forth the percentage of

28

foster children who have already been in care longer than 12 months. Nearly 80% of the more than 6,000 Black children in foster care have been held by the Defendants for more than the legally permissible limit of 12 months; 68% of the more than 6,000 White children stuck in foster care limbo have been there longer than the 12 months limit.

47. As a result of being kept longer in the system than they should be, the children overflow the Defendants' foster facilities, causing further overcrowding and greater risk of harm and increasing the likelihood of the abuse, neglect and financial exploitation of these children.

48. As the result of their illegally excessive foster care confinement with its associated harm and devastating lack of permanence, the plaintiff children have been harmed physically and mentally, are not developing properly and are being subjected to other cruel yet foreseeable abuses inflicted upon them by others in the foster care system.

49. The problems of foster care programs in Dade County are neither new nor surprising. In 1978 a Grand Jury in Dade County looked into the unacceptable dysfunction of the District 11 foster care system. [Final Report of the Grand Jury, "1978 Report", p. 29].

50. The 1978 Grand Jury found that 36% of the children studied had been in foster care for more than five years.  The Grand Jury noted DCAF's contention that large numbers of foster children were unadoptable but found that the large number of children denied permanency was more likely due to the fact that DCAF's perception functioned as a self-fulfilling prophecy, to justify DCAF's virtually non-existent, non-aggressive efforts to return foster children to their natural parents or place them in adoptive homes.

51. As a 1989 Grand Jury Report reflected 11 years later, the situation in 1989 [11 years ago] showed no noteworthy improvement from the 1978 situation.

52. The 1978 Grand Jury was troubled by the apparent drift of many foster children from home to home, particularly those in long term placement, and the State was - in 1978! - directed to increase its efforts to promote stability and placement.  It did not.

53. The 1989 Grand Jury again deplored the fact that the lack of stability and delay in termination of parental rights continued. The 1989 Grand Jury also noted the continuing lack of good residential and group foster homes in the community, finding the same problems as the 1978 Grand Jury.

54. In January 1995, a grand jury in Palm Beach County released its report, finding that

> Children alleged to be abused, neglected or abandoned in Palm Beach County are at significant risk for further abuse if they are taken into the custody of the Department of Health and Rehabilitative Services.

January 13, 1995 Grand Jury Report, p. 1.  The Grand Jury also re-recommended areas of changes first urged in the December 14, 1993 report of the Fifteenth Circuit Grand Jury, and asked for a statewide Grand Jury, which has still not been convened by Defendants.  Indeed, the only known statewide quality assurance review was conducted in 1994, finalized in 1995; Defendants have provided no quality control assessment since.

55. The State of Florida has consistently disregarded its obligations toward the innocent abused and neglected victims who languish, almost invisibly, in DCAF placements. The invisibility is due, at least in part, to DCAF's subversion and misuse of the confidentiality protecting certain court records to protect itself from scrutiny.

56. In the late 1980's, DCAF received an additional nearly $2 billion annually, raising the budget by nearly 50% from $4.1 billion to nearly $6 billion.  In the early 1990's the legislature provided more than another $100 million in additional funding for the specific purpose of addressing the deficiencies in the foster care system acknowledged in January

1992.  Although the then-Secretary claimed that the funds improved the system by reducing the foster care population by 10% since 1991, increasing the number of case workers 56% and increasing the number of children successfully placed for adoption, as of January 1995, there remained at least 5,782 children in DCAF's care too long, some 50% of the children in "inventory" as of that time.

Today, although even more additional funds have been budgeted, 9,366 children [more than 70% of all children in care as of January 2000] have been held there too long, benefiting only DCAF and its providers.  Of greater concern is the increase in length of stay numbers despite the larger numbers of children just coming into the system, which influx has brought the average lower than it would otherwise have been.

57. The problems faced by children in foster care are both epidemic and long-standing.  The Defendants have failed to discharge their legal responsibilities to these children.

58. Defendants for years have attempted to excuse or justify the failure to comply with the maximum time limits by claiming to not be able to find adequate adoptive homes and foster homes.  For thousand of children Defendants do not even look for families.  This lack of real permanency has resulted,

inter alia, in foster children being deprived of their rights to the opportunity to seek a healthy parent substitute through the adoption process and to finally enjoy a healthy permanent home.  Further, if the system had functioned properly since this administration took office in January 1998, the 9,673 present long-termers would no longer be DCAF children, but would be children living with loving, stable permanent families.

59. Continued overcrowding and inadequately supervised foster homes expose foster children to the very real risk of sexual and other abuse and neglect while they remain wards of DCAF.

60. The deficient foster care conditions and the excessive time spent in foster care are known to the Defendants but have not been addressed properly by the Defendants.  In fact, DCAF has deliberately used a provider-focused system, concentrating on the department, its workers and its outside providers, and ignoring state and federal law as to its obligations to the children.  DCAF and the Defendants have also intentionally misused the long term foster care permanency goal and have ignored the right of children to permanent families outside of State custody, keeping the children in the system and exploiting the

children's presence to provide revenue maximization for the department and its providers.

61. The Defendants know that Florida's foster care system discriminates against Black children, but have taken no action to remedy the shameful situation.

62. The Defendants know that the confidentiality provisions in state and federal law are intended to protect the child and family, yet warp and twist the confidentiality provision to protect DCAF and its providers, and to cover up DCAF's chronic disregard of the abuse of foster children in DCAF-approved placements, as well as DCAF's flagrant chronic violation of the length of stay laws and the rights of children and their attorneys to their own records.

63. The Defendants know that their revenue maximization increases if a child is abused and broken by the foster care system to the point the child is eligible for federal disability benefits, because the Defendants know DCAF intercepts such federal funds and uses them for itself.

64. The Defendants know that Florida's independent living system violates the rights of disabled children because DCAF's interception of a disabled child's funds precludes disabled foster children from meeting the savings criteria

34

capriciously, irrationally and unfairly insisted upon by DCAF as a precondition to being considered for independent living.

65. The Defendants know that the longer they subject a foster child to the inhumane conditions that comprise Florida's foster care system, the more likely the child is to become a truant child, then a delinquent child. Notwithstanding this knowledge, the Defendants continue to exploit Florida's foster children, exposing them to unspeakable horrors with no real families to provide needed moral or emotional support.

66. To the extent the Defendants have wrongly delayed in providing services and/or giving the children good permanent homes because of any disability or unlawful racial discrimination, the failure constitutes illegal and impermissible discrimination violative of 42 U.S.C. § 1983 and 42 U.S.C. § 12132.

67. Defendants' failure to comply with the mandatory termination requirements of the controlling plan constitutes gross neglect and deliberate indifference to their obligations to the children whose custody has been entrusted to them.

68. The Defendants have knowingly:

a) Allowed children in foster care to be placed in overcrowded, inadequate or otherwise unsuitable foster

homes;

b) Failed to properly monitor and supervise the foster children entrusted to them;

c) Intentionally chosen to keep foster children in State custody for longer than legally allowable;

d) Created excessive caseloads for the foster caseworkers by ignoring legal time limits on the length of foster care permissible;

e) Failed to take the action necessary to provide foster children with the adoptive, permanent, stable, healthy environment to which they are constitutionally and legally entitled no later than twelve months after being adjudicated dependent.

f) Improperly utilized excessive medications including, but not limited to Ritalin, Thorazine, Benadryl, Paxil and Lithium, and placed children in more restrictive placements than necessary rather than securing appropriate permanent homes and families, further violating the children's rights and subjecting the children to increasingly severe psychological damage.

g) Knowingly violated the provisions currently in Chapter 65C of the Florida Administrative Code mandating the actions for Defendants to take to provide properly for

these children.

h) Failed to operate Florida's foster care system in a manner consistent with the competent professional judgment.

69. The Defendants' acts are such improper deprivations of proper shelter and environment as to constitute child abuse and neglect. Such grossly negligent treatment of the foster children in question constitutes child abuse and neglect and violates the Eighth Amendment's prohibition of cruel and unusual punishment and the childrens' basic due process rights to be free from governmental harm under the Federal and State Constitutions.

70. By their culpable negligence and their failure to comply with Florida law, the Florida Administrative Code and their failure to operate the system consistent with competent professional judgment, the Defendants have caused Plaintiff class members to be denied their due process rights and to be deprived of necessary safe shelter and have permitted the infliction of physical, mental and psychological injuries to be inflicted on members of the Plaintiff class, contrary to the provisions of section 827.04, Florida Statutes and the children's federal and State rights.

71. As a direct and proximate result of the Defendants

conduct, Plaintiffs have been deprived by State action, under color of State law, and without any due process of their right to be free from cruel and unusual punishment and of their rights to the benefits guaranteed to them under Federal and Florida law and the Fourteenth Amendment.

72. Defendants' failure to provide children in their custody with reasonably safe placements, care that is consistent with competent professional judgment, and the protections afforded to them by Florida Statutes and the Florida Administrative Code have caused these children to suffer harm which is often more severe than that which caused them to be removed from the custody of their parents and or custodians and which will leave them with long-lasting physical and emotional wounds more serious than any injuries caused by their families.

## VII. FIRST CLAIM FOR RELIEF: SUBSTANTIVE DUE PROCESS

Plaintiffs reallege the allegations of paragraph 1 through 72, and further allege:

73. Defendants have denied Plaintiffs' right to substantive due process by, inter alia:

a. Detaining non-adjudicated children for excessive lengths of time in emergency shelter status

in an attempt to convince non-abusive, non-neglectful parents to falsely stipulate to a dependency adjudication.

b. Providing a foster care environment not consistent with competent professional judgment;

c. Failing to comply with the State plan for permanency following 12 months of foster care;

d. Unreasonably restraining Plaintiffs liberty by keeping them isolated from their siblings and a permanent environment;

e. Causing their emotional conditions to worsen by ignoring the maximum 12 months time limit on the amount of time a child can be kept in foster care, thereby further overcrowding facilities and overloading the case workers assigned;

f. Denying the children the permanence of safe natural or adoptive families in violation of the children's right to be properly and safely parented;

g. Subjecting the children to excessive medication and placements other than the least restrictive placement, constituting inappropriate invasive control tactics violative of the children's rights;

h. By holding non-dependent children in emergency

shelters for more than 30 days, causing harm and deterioration.

i. By ignoring the clear intent of Congress and Florida's legislature that no child spend more than 12 months in foster care and by not aggressively and diligently pursuing proper reunification efforts with those parents with whom the children could be safely reunified, and not promptly pursuing good adoptive placements, the Defendants' gross neglect has predictably resulted in these children failing to thrive and has subjected them to unacceptable and improper psychological pressure and, in far too many instances, physical abuse.

j. The Defendants have wrongly interfered with the children's guaranteed access to education and fail to provide for the proper education of the children retained in foster care, acting in gross disregard of the children's rights under federal and state law to a proper.

k. Retaining Plaintiffs in foster care under the circumstances existing constitutes cruel and unusual punishment contrary to the provision of the Eighth Amendment to the United States Constitution.

l. By ignoring the 12 month time limit imposed by federal and Florida law, the Defendants have essentially imprisoned the Plaintiffs and kept them from having the liberty necessary to enjoy a normal childhood, with a permanent, stable healthy environment.

m. By illegally discriminating on the basis of ethnic and racial background.

n. By operating the foster care system for the financial benefit of DCAF and its providers while abusing and neglecting the children, contributing to their dependency and, in some cases, to their delinquency.

74.   Defendants' policies, practices, acts and omissions in operating Florida's foster care program constitute a failure to provide Plaintiffs with reasonably safe placements and protection from harm while in state custody in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States.

75. Defendants' policies, practices, acts and omissions in operating Florida's foster care program constitute failure to provide Plaintiffs with care that is consistent with competent professional judgment in violation of the due

process clause of the Fourteenth Amendment to the Constitution of the United States.

WHEREFORE Plaintiffs seek the relief set forth herein.

## VIII. SECOND CLAIM FOR RELIEF: PROCEDURAL DUE PROCESS

Plaintiffs reallege the allegations of paragraphs 1 through 72 and further allege:

76. Defendants' policies, practices, acts and omissions in operating Florida's shelter and foster care programs, in contravention of the Florida statutory and regulatory scheme which mandates that officials follow guidelines and take affirmative actions to ensure the welfare and well-being of children in foster care, deprives Plaintiffs of their liberty interest in personal safety in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States.

WHEREFORE Plaintiffs seek the relief requested herein.

## VIIII. THIRD CLAIM FOR RELIEF: EQUAL PROTECTION

Plaintiffs reallege paragraphs numbered 1 through 72 and further allege:

77. As clearly reflected in Exhibit A, the Defendants treat Black children differently than other children in every aspect of Florida's foster care system.

78. As a result of the Defendants' actions in not properly operating the foster care system, the Defendants are illegally treating children of color as second class citizens and denying these children the protection of the laws to which they are entitled.

WHEREFORE Plaintiffs seek the relief requested herein.

## REMEDY AT LAW INADEQUATE

79. Each day that the Defendants delay their compliance with the controlling law, foster children are damaged. There is no plain, adequate or complete remedy at law. Plaintiffs will continue to be irreparably injured by the Defendants' policies, practices, acts and omissions until and unless this Court grants the injunctive relief requested.

80. With each day that Defendants delay their compliance with the law, continue their unlawful custody of members of the Plaintiff class, and continue confining Plaintiffs in inadequate, temporary, unstable foster homes, Plaintiffs are being harmed and losing valuable rights for which there is no adequate remedy at law for damages and can only request this

Court to immediately order the Defendants to stop their
unlawful activity and to immediately begin complying with the
provisions of federal and Florida laws.

RELIEF REQUESTED

Plaintiffs request that the Court order that this
action be maintained as a class action pursuant to Rule 23,
Federal Rules of Civil Procedure.

Plaintiffs request the Court to declare unlawful the
Defendants' policies and practices of ignoring federal and
Florida laws and the Florida foster care plan with the result
of denying Plaintiffs and the Plaintiff class the benefits to
which they are entitled under the plan.

Plaintiffs further request the Court to provide
temporary injunctive relief and a permanent injunction
requiring the Defendants to operate the foster care system in
accordance with the laws in effect, and the procedural and
substantive due process and equal protection rights of the
children. The injunction should:

A. As to any child in emergency shelter status
longer than 30 days for whom no adjudication of
dependency has yet been entered, require the
Defendants to immediately return the child to the
parent or other suitable relative caretaker with no

44

further delay.

B. Immediately order the Defendants to promptly initiate termination proceedings or otherwise provide children with permanency in all cases more than 12 months old without reunification having been already safely completed.

C. Require the Defendants to immediately cease the excessive medication of children being held by them in foster care and to reevaluate the appropriateness of forcing children to take mind-or-behavior-altering drugs rather than providing them with the permanent, nurturing families the children are entitled to.

D. Whenever possible, require the Defendants to stop changing the children's house placements from one school's boundary area to another when the child has adjusted to the school and is learning.

E. Require the Defendants to provide a minimum of two hours per month direct contact between non-abusive siblings, in addition to allowing liberal sibling telephone and letter writing access to each when the Defendants do not place the children in the same placement.

F. Require the Defendants to immediately comply with the 5-child per house maximum to end the overcrowding and unacceptable increased risk of harm;

G. Prohibit the Defendants from paying for case management relating to any foster child in care for more than 30 days for whom there is no case plan in effect;

H. Prohibit the Defendants from removing children from abusive or neglectful relative homes unless the Defendants have taken proper action to ensure that the Defendants'-selected placement will be safer for the child than the home the child is being removed from;

I. Require the Defendants to immediately remove all foster children from any foster placement where the custodian or other occupant has a criminal child abuse conviction;

J. Within 30 days, prohibit the Defendants' utilization of long term foster care or long term custody as a legitimate permanency goal;

K. Immediately eliminate racial and ethnic discrimination;

L. Immediately prohibit further ADA violations

and further denial of access to independent living programs for children with physical or other disabilities;

M. Appoint a permanent child advocate or ombudsman to oversee Defendants' compliance;

N. Appoint foster care review boards with the authority to provide oversight and require the Defendants to provide children with permanency when children have not been moved to permanency within the time limits of the Adoptions and Safe Families Act, Florida law and competent professional judgment.

O. Require the Defendants to eliminate the conflict of interest inherent in DCAF investigating allegations of abuse and neglect by facilities and placements it licenses directly or indirectly;

P. Prohibit the Defendants from seizing children and keeping them in conditions causing deterioration, holding them hostage for the purpose of compelling parents to admit child abuse or neglect when there is none;

Q. Prohibit the Defendants from retaliating against parents or children in any circumstance, including those when parents refuse to admit DCAF's

untrue charges of abuse or neglect or requests are made for copies of records;

R. Prohibit the Defendants from placing a child in a DCAF-licensed or contracted facility unless and until a proper diligent search for suitable relative caretaker has been completed and it has been properly determined there are no suitable relative caretakers;

S. Require the Defendants to promptly utilize family group conferencing, dependency mediation and concurrency planning when children are taken from their families in order to maximize chances for reunification and simultaneously minimize the time needed to find the child a good permanent adoptive family if reunification does not occur within 12 months; and

T. Prohibit the Defendants from withholding records from children and their attorneys or guardians ad litem.

Plaintiffs also request the entry of an order assessing their costs and reasonable attorney's fees against the Defendants pursuant to 42 U.S.C. §1988 and such further relief as the Court deems appropriate.

DATED this 13th day of June, 2000.

> GIEVERS, P.A.
> COUNSEL for Plaintiffs
> 524 E. College Avenue
> Suite 2
> Tallahassee, FL 32301
> T - 850/222-1961
> F - 850/222-2153
>
> KAREN GIEVERS
> Fla. Bar No.: 262005

## Co-Counsel for Plaintiffs

Theodore Babbitt, Esquire
Fla. Bar No.:091146
Babbitt, Johnson and Osborne, P.A.
Suite 200
1801 Australian Avenue South
West Palm Beach, FL 33409
Mailing address:
P.O. Box 024426
West Palm Beach, FL 33402
T - 561/684-2500
F - 561/684-6308

Robert M. Montgomery, Esquire
Fla. Bar No.: 056153
Montgomery & Larmoyeux
1016 Clearwater Place
West Palm Beach, FL 33401
T - 561/832-2880
F - 561/832-0887

Michael R. Barnes, Esquire
Fla. Bar No.:
(pending admission pro haec vice)
Law Offices of Michael R. Barnes
P.O. Box 1777
Key West, FL 33041
T - 305/296-5297
F - 305/296-6254

Barbara C. Burch, Esquire
Fla. Bar No.: 0978670
423 Fern Street, Suite 300
West Palm Beach, FL 33401
T - 561/655-8944
F - 561/655-5269

William M. Chanfrau, Esquire
Fla. Bar No.: 0155064
(pending admission pro haec vice)
Chanfrau, Chanfrau & Bouch
P.O. Box 265880
Daytona Beach, FL 32126
T - 800/969-7313
T - 904/258-7313

Jerold Feuer, Esquire
Fla. Bar No.:
(pending admission pro haec vice)
402 N.E. 36th Street
Miami, FL 33137
T - 305/573-2282
F - 305/573-2285

Robert A. Glenn, Esquire
Fla. Bar No.: 159844
(pending admission pro haec vice)
Glenn, Rasmussen, et al
P. O. Box 3333
Tampa, FL 33601
T - 813/229-3333
F - 813/229-5946

Wayne Hogan, Esquire
Fla. Bar No.: 142460
(pending admission pro haec vice)
Brown, Terrell, Hogan et al.
233 E. Bay Street, Fl. 8
Jacksonville, FL 32202
T - 904/632-2424
F - 904/353-4418

Jorge A. Lorenzo, Esquire
Fla. Bar No.: 849596
(pending admission pro haec vice)
1001 N. Macdill Ave., Suite A
Tampa, FL 33607
T - 813/998-9529
F - 813/998-9329

Bernard P. Perlmutter, Esquire
Fla. Bar No.: 455260
Univ. of Miami School of Law
5915 Ponce de Leon Blvd #28
Coral Gables, FL 33146
T - 305/284-3123
F - 305/284-4384

Michelle Hankey, Esquire
Fla. Bar No.: 0827835
(pending admission pro haec vice)
423 Fern Street, Suite 200
West Palm Beach, FL 33401
T - 561/655-8944
F - 561/655-5269

Robert G. Kerrigan, Esquire
Fla. Bar No.: 134044
(pending admission pro haec vice)
Kerrigan, Estes, et al.
400 E. Government Street
Pensacola, FL 32501
T - 850/444-4444
F - 850/444-4493

John B. Ostrow, Esquire
Fla. Bar No.: 124324
Law Offices of John B. Ostrow,
P.A.
Miami Center Bldg, Suite 1380
201 S. Biscayne Blvd.
Miami, FL 33131
T - 305/358-1496
F - 305/371-7999

Carolyn Salisbury, Esquire
Fla. Bar No.: 0074772
(pending admission pro haec vice)
Univ. of Miami School of Law
5915 Ponce de Leon Blvd #28
Coral Gables, FL 33146
T - 305/284-4321
F - 305/284-4384

Gregory A. Samms, Esquire
Fla. Bar No.: 438863
9th Floor, New Times Towers
2800 Biscayne Blvd.
Miami, Fl 33137
T - 305/573-2444
F - 305/576-9113

Neil C. Spector, Esquire
Fla. Bar No.:280471
(pending admission pro haec vice)
1505 N. Florida Avenue
P.O. Box 800
Tampa, FL 33601
T - 813/229-0900
F - 813/229-3323

Susan L. Stockham, Esquire
Fla. Bar No.: 342521
(pending admission pro haec vice)
2700 S. Tamiami Tr., Suite 17
Sarasota, FL 34239
T - 941/957-0094
F - 941/957-0084

James Walsh, Esquire
Fla. Bar No.: 0796352
(pending admission pro haec vice)
423 Fern Street, Suite 200
West Palm Beach, FL 33401
T - 561/655-8944 ext. 243
F - 561/655-5269

John Walsh, Esquire
Fla. Bar No.: 0796360
(pending admission pro haec vice)
423 Fern Street, Suite 200
West Palm Beach, FL 33401
T - 561/655-8944 ext. 242
F - 561/655-5269

Dianne Weaver, Esquire
Fla. Bar No.: 139778
Krupnick, Campbell, et al.
700 SE 3rd Avenue
Suite 100
Ft. Lauderdale, Fl 33316
T - 954/763-8181
F - 954/763-8292

## Length of Stay (months) for Foster Care - Substitute Care Cases
### Clients Currently ACTIVE in Care as of 1-13-2000

| DISTRICT | 1 | | | | 2 | | | | 3 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | ALOS* | % 12+ | % 15+ | N | ALOS* | % 12+ | % 15+ | N | ALOS* | % 12+ | % 15+ | N |
| **CLIENTS WITH A CURRENT GOAL OF** | | | | | | | | | | | | |
| PERM CUSTODY OF FOSTER PARENT | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 | 149.7 | 100.0 | 100.0 | 1 |
| ADOPTION | 32.2 | 93.9 | 88.6 | 114 | 31.5 | 87.3 | 81.4 | 118 | 49.3 | 92.6 | 91.2 | 148 |
| LONG TERM FOSTER CARE | 47.6 | 93.3 | 90.0 | 60 | 51.3 | 88.0 | 85.3 | 75 | 70.8 | 100.0 | 97.3 | 111 |
| TEMPORARY PLCMNT & RETURN HOME | 15.2 | 43.1 | 38.9 | 211 | 14.8 | 45.0 | 34.6 | 211 | 18.8 | 59.0 | 48.5 | 363 |
| INDEP LVNG-STILL FOSTER CARE PLCMT | 37.9 | 68.6 | 68.6 | 35 | 47.2 | 100.0 | 100.0 | 10 | 128.5 | 100.0 | 100.0 | 3 |
| INDEP LVNG-SUBSIDIZED LIVING | 52.1 | 100.0 | 100.0 | 6 | 78.4 | 95.8 | 95.8 | 24 | 97.1 | 100.0 | 100.0 | 7 |
| **CLIENTS BY CURRENT LEGAL STATUS** | | | | | | | | | | | | |
| INVALID LEGAL STATUS | 0.0 | 0.0 | 0.0 | 1 | 0.0 | 0.0 | 0.0 | 4 | 0.0 | 0.0 | 0.0 | 2 |
| VOLUNTARY PLACEMENT | 0.0 | 0.0 | 0.0 | 0 | 50.8 | 66.7 | 66.7 | 15 | 44.9 | 100.0 | 100.0 | 3 |
| TEMPORARY CUSTODY OF DCF | 23.6 | 63.9 | 59.4 | 379 | 24.8 | 63.6 | 55.5 | 345 | 23.7 | 66.1 | 57.3 | 457 |
| PERMANENT COMMITMENT | 51.9 | 97.4 | 97.4 | 38 | 50.2 | 91.7 | 88.9 | 72 | 72.3 | 98.2 | 96.4 | 168 |
| CUSTODY OF OTHER STATE | 54.2 | 62.5 | 62.5 | 8 | 1.4 | 0.0 | 0.0 | 1 | 33.9 | 100.0 | 100.0 | 3 |
| **CLIENTS BY RACE** | | | | | | | | | | | | |
| BLACK | 30.2 | 68.3 | 65.2 | 161 | 34.9 | 69.0 | 62.6 | 203 | 47.1 | 81.8 | 74.6 | 236 |
| WHITE | 24.7 | 66.0 | 61.5 | 262 | 25.3 | 66.7 | 59.0 | 234 | 30.5 | 70.6 | 64.1 | 395 |
| OTHER | 14.0 | 33.3 | 33.3 | 3 | 18.6 | 100.0 | 100.0 | 1 | 16.7 | 50.0 | 50.0 | 2 |
| **CLIENTS BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0-5 YRS | 14.1 | 47.5 | 39.0 | 118 | 14.8 | 50.4 | 37.8 | 135 | 16.1 | 55.6 | 48.0 | 198 |
| AGE GROUP 6-12 YRS | 26.8 | 70.7 | 69.4 | 157 | 25.4 | 68.8 | 63.0 | 138 | 31.8 | 73.6 | 66.8 | 208 |
| AGE GROUP 13-15 YRS | 30.8 | 74.3 | 67.1 | 70 | 33.8 | 69.6 | 63.3 | 79 | 50.5 | 87.0 | 76.1 | 92 |
| AGE GROUP 16-18 YRS | 39.0 | 79.2 | 79.2 | 77 | 48.0 | 90.9 | 89.4 | 66 | 62.0 | 95.8 | 92.5 | 120 |
| AGE GROUP 19+ YRS | 84.4 | 100.0 | 100.0 | 4 | 82.9 | 95.0 | 95.0 | 20 | 87.7 | 100.0 | 100.0 | 15 |
| **CLIENTS W/ GOAL OF ADOPTION BY RACE** | | | | | | | | | | | | |
| BLACK | 30.1 | 92.2 | 88.2 | 51 | 35.0 | 91.5 | 81.4 | 59 | 58.7 | 97.3 | 94.6 | 74 |
| WHITE | 33.9 | 96.2 | 88.9 | 63 | 28.1 | 83.1 | 81.4 | 59 | 39.9 | 87.8 | 87.8 | 74 |
| OTHER | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 |
| **CLIENTS W/ GOAL OF ADOPTION BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0-5 YRS | 24.1 | 93.3 | 83.3 | 30 | 24.5 | 88.4 | 76.7 | 43 | 27.0 | 82.9 | 78.0 | 41 |
| AGE GROUP 6-12 YRS | 31.9 | 92.9 | 91.4 | 70 | 35.3 | 86.9 | 85.2 | 61 | 52.0 | 94.7 | 94.7 | 75 |
| AGE GROUP 13-15 YRS | 37.1 | 100.0 | 75.0 | 8 | 36.9 | 85.7 | 78.6 | 14 | 73.1 | 100.0 | 100.0 | 25 |
| AGE GROUP 16-18 YRS | 68.8 | 100.0 | 100.0 | 6 | 0.0 | 0.0 | 0.0 | 0 | 66.6 | 100.0 | 100.0 | 7 |
| AGE GROUP 19+ YRS | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 |
| **PERM COMMIT CLIENTS BY RACE** | | | | | | | | | | | | |
| BLACK | 61.3 | 100.0 | 100.0 | 12 | 63.4 | 100.0 | 96.2 | 26 | 83.0 | 97.5 | 94.9 | 79 |
| WHITE | 47.6 | 96.2 | 96.2 | 26 | 42.7 | 87.0 | 84.8 | 46 | 62.7 | 98.9 | 97.8 | 89 |
| OTHER | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 |
| **PERM COMMIT CLIENTS BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0-5 YRS | 29.2 | 100.0 | 100.0 | 5 | 26.0 | 81.8 | 63.6 | 11 | 32.3 | 92.9 | 89.3 | 28 |
| AGE GROUP 6-12 YRS | 45.8 | 95.0 | 95.0 | 20 | 39.3 | 89.3 | 89.3 | 28 | 62.3 | 98.0 | 98.0 | 49 |
| AGE GROUP 13-15 YRS | 63.9 | 100.0 | 100.0 | 5 | 54.5 | 94.1 | 94.1 | 17 | 82.0 | 100.0 | 97.5 | 40 |
| AGE GROUP 16-18 YRS | 73.9 | 100.0 | 100.0 | 8 | 70.5 | 100.0 | 100.0 | 11 | 93.7 | 100.0 | 97.7 | 43 |
| AGE GROUP 19+ YRS | 0.0 | 0.0 | 0.0 | 0 | 104.9 | 100.0 | 100.0 | 5 | 109.1 | 100.0 | 100.0 | 8 |
| **PERM COMMT & ADPT CLIENTS BY RACE** | | | | | | | | | | | | |
| BLACK | 42.3 | 100.0 | 100.0 | 9 | 42.0 | 100.0 | 92.9 | 14 | 68.8 | 96.2 | 96.2 | 53 |
| WHITE | 41.8 | 94.7 | 94.7 | 19 | 37.0 | 86.2 | 82.8 | 29 | 50.1 | 97.3 | 97.3 | 37 |
| OTHER | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 |
| **PERM COMMT & ADPT CLIENTS BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0-5 YRS | 29.2 | 100.0 | 100.0 | 5 | 27.9 | 90.0 | 70.0 | 10 | 33.1 | 91.3 | 91.3 | 23 |
| AGE GROUP 6-12 YRS | 39.4 | 94.4 | 94.4 | 18 | 40.0 | 88.5 | 88.5 | 26 | 63.6 | 97.6 | 97.6 | 42 |
| AGE GROUP 13-15 YRS | 55.7 | 100.0 | 100.0 | 2 | 48.8 | 100.0 | 100.0 | 7 | 81.7 | 100.0 | 100.0 | 21 |
| AGE GROUP 16-18 YRS | 69.5 | 100.0 | 100.0 | 3 | 0.0 | 0.0 | 0.0 | 0 | 88.8 | 100.0 | 100.0 | 4 |
| AGE GROUP 19+ YRS | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 |
| **ALL CLIENTS** | 26.7 | 66.7 | 62.7 | 426 | 29.7 | 67.8 | 60.7 | 438 | 36.7 | 74.7 | 67.9 | 633 |
| **ALL CLIENTS EXCEPT IN CUSTODY OF FOSTER PARENT & SUBSIDIZED LIVING** | 26.3 | 66.2 | 62.1 | 420 | 26.9 | 66.2 | 58.7 | 414 | 35.8 | 74.4 | 67.5 | 625 |

Data source: Client Information System (CIS) ad hoc runs.
* ALOS  = Average Length of Stay in months calculated from the initial Placement in
       Substitute Care Date to the As of Date in the report title.
       Averages with an N of less than 30 are considered statistically unstable.
% 12+ = Percent of clients in care whose current length of stay is 12 months or more.
% 15+ = Percent of clients in care whose current length of stay is 15 months or more.
N     = Number of clients in care for whom the average and percents are calculated.
       Includes clients with a service status of Inactive - Runaway.
Clients are unduplicated for each district and statewide.
Totals for each district will not sum to the statewide total.

Note: Community Based Care data are based on units.
    4 CBC includes 048007, 048497, 048498, and 048499.
    8 CBC includes 085Y01, 085Y02, 085Y03, and 085Y04.

NOTE: THIS DOES NOT REPRESENT TOTAL LENGTH OF CARE,
BUT ONLY THE TIME SPENT IN CARE TO DATE FOR ACTIVE CLIENTS.
AVERAGES CAN BE GREATLY SKEWED BY A FEW OUTLYING (LONG TERM) CASES.

Exhibit A

JU0006

## Length of Stay (months) for Foster Care - Substitute Care Cases
## Clients Currently ACTIVE in Care as of 1-13-2000

DISTRICT

| | 4 | | | | 4 CBC | | | | 5 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | ALOS* | % 12+ | % 15+ | N | ALOS* | % 12+ | % 15+ | N | ALOS* | % 12+ | % 15+ | N |
| **CLIENTS WITH A CURRENT GOAL OF** | | | | | | | | | | | | |
| PERM CUSTODY OF FOSTER PARENT | 64.3 | 100.0 | 100.0 | 6 | 71.9 | 100.0 | 100.0 | 3 | 64.1 | 100.0 | 100.0 | 6 |
| ADOPTION | 45.7 | 97.7 | 95.5 | 221 | 87.9 | 100.0 | 100.0 | 21 | 35.5 | 90.5 | 86.5 | 222 |
| LONG TERM FOSTER CARE | 77.8 | 100.0 | 100.0 | 45 | 65.7 | 100.0 | 100.0 | 28 | 59.4 | 93.4 | 92.6 | 121 |
| TEMPORARY PLCMNT & RETURN HOME | 20.8 | 59.4 | 48.6 | 446 | 92.8 | 83.6 | 78.0 | 232 | 19.4 | 43.9 | 41.2 | 420 |
| INDEP LVNG-STILL FOSTER CARE PLCMT | 41.3 | 100.0 | 100.0 | 4 | 64.2 | 93.3 | 93.3 | 15 | 33.1 | 66.7 | 66.7 | 6 |
| INDEP LVNG-SUBSIDIZED LIVING | 0.0 | 0.0 | 0.0 | 0 | 62.1 | 100.0 | 100.0 | 2 | 58.7 | 100.0 | 100.0 | 5 |
| **CLIENTS BY CURRENT LEGAL STATUS** | | | | | | | | | | | | |
| INVALID LEGAL STATUS | 0.0 | 0.0 | 0.0 | 12 | 0.0 | 0.0 | 0.0 | 4 | 0.0 | 0.0 | 0.0 | 27 |
| VOLUNTARY PLACEMENT | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 | 42.9 | 75.0 | 75.0 | 4 |
| TEMPORARY CUSTODY OF DCF | 26.8 | 71.3 | 62.3 | 604 | 37.1 | 85.8 | 81.0 | 274 | 24.1 | 60.0 | 53.3 | 548 |
| PERMANENT COMMITMENT | 74.7 | 98.8 | 98.8 | 84 | 92.7 | 100.0 | 100.0 | 22 | 53.1 | 96.5 | 93.3 | 181 |
| CUSTODY OF OTHER STATE | 36.8 | 72.7 | 59.1 | 22 | 83.0 | 100.0 | 100.0 | 1 | 34.1 | 80.0 | 80.0 | 20 |
| **CLIENTS BY RACE** | | | | | | | | | | | | |
| BLACK | 35.3 | 77.8 | 68.6 | 369 | 43.3 | 88.6 | 84.8 | 210 | 31.2 | 71.8 | 64.3 | 213 |
| WHITE | 29.8 | 71.2 | 63.4 | 347 | 38.8 | 84.4 | 78.9 | 90 | 30.8 | 67.4 | 62.8 | 559 |
| OTHER | 9.1 | 33.3 | 16.7 | 6 | 5.8 | 0.0 | 0.0 | 1 | 21.1 | 50.0 | 50.0 | 8 |
| **CLIENTS BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0- 5 YRS | 19.2 | 65.0 | 52.2 | 274 | 20.3 | 60.0 | 40.0 | 10 | 17.5 | 53.7 | 48.1 | 285 |
| AGE GROUP 6-12 YRS | 34.8 | 77.4 | 70.0 | 310 | 31.4 | 85.3 | 76.5 | 34 | 28.2 | 69.1 | 62.3 | 285 |
| AGE GROUP 13-15 YRS | 48.0 | 84.0 | 81.3 | 75 | 39.0 | 81.3 | 76.6 | 128 | 45.1 | 84.2 | 81.2 | 133 |
| AGE GROUP 16-18 YRS | 57.9 | 86.2 | 82.8 | 58 | 47.9 | 95.0 | 93.3 | 119 | 52.8 | 87.5 | 83.0 | 88 |
| AGE GROUP 19+ YRS | 81.8 | 100.0 | 100.0 | 5 | 63.1 | 100.0 | 100.0 | 10 | 78.4 | 100.0 | 100.0 | 9 |
| **CLIENTS W/ GOAL OF ADOPTION BY RACE** | | | | | | | | | | | | |
| BLACK | 49.7 | 99.2 | 96.0 | 124 | 88.1 | 100.0 | 100.0 | 13 | 32.4 | 88.1 | 84.7 | 59 |
| WHITE | 40.9 | 95.8 | 94.8 | 96 | 87.4 | 100.0 | 100.0 | 8 | 38.9 | 91.9 | 87.5 | 160 |
| OTHER | 17.4 | 100.0 | 100.0 | 1 | 0.0 | 0.0 | 0.0 | 0 | 19.1 | 66.7 | 66.7 | 3 |
| **CLIENTS W/ GOAL OF ADOPTION BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0- 5 YRS | 29.5 | 97.3 | 93.3 | 75 | 0.0 | 0.0 | 0.0 | 0 | 25.8 | 86.8 | 83.5 | 91 |
| AGE GROUP 6-12 YRS | 48.8 | 97.5 | 95.8 | 118 | 0.0 | 0.0 | 0.0 | 0 | 41.4 | 94.6 | 89.2 | 93 |
| AGE GROUP 13-15 YRS | 63.0 | 100.0 | 100.0 | 20 | 86.9 | 100.0 | 100.0 | 11 | 42.8 | 91.2 | 88.2 | 34 |
| AGE GROUP 16-18 YRS | 108.9 | 100.0 | 100.0 | 8 | 88.9 | 100.0 | 100.0 | 10 | 57.2 | 75.0 | 75.0 | 4 |
| AGE GROUP 19+ YRS | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 |
| **PERM COMMIT CLIENTS BY RACE** | | | | | | | | | | | | |
| BLACK | 77.9 | 98.0 | 98.0 | 60 | 100.7 | 100.0 | 100.0 | 11 | 47.9 | 93.9 | 93.9 | 49 |
| WHITE | 70.1 | 100.0 | 100.0 | 34 | 84.6 | 100.0 | 100.0 | 11 | 55.6 | 98.2 | 93.8 | 130 |
| OTHER | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 | 25.0 | 100.0 | 100.0 | 2 |
| **PERM COMMIT CLIENTS BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0- 5 YRS | 38.9 | 91.7 | 91.7 | 12 | 0.0 | 0.0 | 0.0 | 0 | 25.4 | 85.0 | 82.5 | 40 |
| AGE GROUP 6-12 YRS | 67.9 | 100.0 | 100.0 | 36 | 0.0 | 0.0 | 0.0 | 0 | 47.9 | 98.2 | 94.7 | 57 |
| AGE GROUP 13-15 YRS | 85.3 | 100.0 | 100.0 | 19 | 98.1 | 100.0 | 100.0 | 10 | 53.7 | 98.1 | 98.1 | 52 |
| AGE GROUP 16-18 YRS | 110.3 | 100.0 | 100.0 | 14 | 91.7 | 100.0 | 100.0 | 11 | 79.0 | 100.0 | 100.0 | 28 |
| AGE GROUP 19+ YRS | 67.0 | 100.0 | 100.0 | 3 | 49.9 | 100.0 | 100.0 | 1 | 87.1 | 100.0 | 100.0 | 4 |
| **PERM COMMT & ADPT CLIENTS BY RACE** | | | | | | | | | | | | |
| BLACK | 74.1 | 100.0 | 100.0 | 36 | 99.2 | 100.0 | 100.0 | 8 | 36.6 | 93.3 | 93.3 | 30 |
| WHITE | 62.7 | 100.0 | 100.0 | 24 | 87.4 | 100.0 | 100.0 | 8 | 41.8 | 94.0 | 90.4 | 83 |
| OTHER | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 | 25.0 | 100.0 | 100.0 | 2 |
| **PERM COMMT & ADPT CLIENTS BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0- 5 YRS | 41.4 | 100.0 | 100.0 | 10 | 0.0 | 0.0 | 0.0 | 0 | 25.8 | 86.8 | 84.2 | 38 |
| AGE GROUP 6-12 YRS | 67.2 | 100.0 | 100.0 | 33 | 0.0 | 0.0 | 0.0 | 0 | 46.0 | 98.1 | 94.2 | 62 |
| AGE GROUP 13-15 YRS | 78.5 | 100.0 | 100.0 | 12 | 96.1 | 100.0 | 100.0 | 8 | 46.3 | 95.7 | 95.7 | 23 |
| AGE GROUP 16-18 YRS | 119.4 | 100.0 | 100.0 | 5 | 90.6 | 100.0 | 100.0 | 8 | 80.3 | 100.0 | 100.0 | 2 |
| AGE GROUP 19+ YRS | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 |
| **ALL CLIENTS** | 32.4 | 74.2 | 65.7 | 722 | 41.8 | 87.0 | 82.7 | 301 | 30.9 | 68.5 | 63.1 | 780 |
| **ALL CLIENTS EXCEPT IN CUSTODY OF FOSTER PARENT & SUBSIDIZED LIVING** | 32.2 | 74.0 | 65.4 | 716 | 41.4 | 86.8 | 82.4 | 296 | 30.4 | 68.0 | 62.5 | 769 |

Data source: Client Information System (CIS) ad hoc runs.

* ALOS = Average Length of Stay in months calculated from the initial Placement in
Substitute Care Date to the As of Date in the report title.
Averages with an N of less than 30 are considered statistically unstable.

% 12+ = Percent of clients in care whose current length of stay is 12 months or more.

% 15+ = Percent of clients in care whose current length of stay is 15 months or more.

N = Number of clients in care for whom the average and percents are calculated.
Includes clients with a service status of Inactive - Runaway.

Clients are unduplicated for each district and statewide.

Totals for each district will not sum to the statewide total.

Note: Community Based Care data are based on units.
4 CBC includes 048007, 048497, 048498, and 048499.
8 CBC includes 085Y01, 085Y02, 085Y03, and 085Y04.

NOTE: THIS DOES NOT REPRESENT TOTAL LENGTH OF CARE,
BUT ONLY THE TIME SPENT IN CARE TO DATE FOR ACTIVE CLIENTS.
AVERAGES CAN BE GREATLY SKEWED BY A FEW OUTLYING (LONG TERM) CASES.

JU00007

## Length of Stay (months) for Foster Care - Substitute Care Cases
## Clients Currently ACTIVE in Care as of 1-13-2000

| DISTRICT | 6 | | | | 7 | | | | 8 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | ALOS* | % 12+ | % 15+ | N | ALOS* | % 12+ | % 15+ | N | ALOS* | % 12+ | % 15+ | N |
| **CLIENTS WITH A CURRENT GOAL OF** | | | | | | | | | | | | |
| PERM CUSTODY OF FOSTER PARENT | 76.8 | 100.0 | 100.0 | 48 | 87.5 | 100.0 | 100.0 | 2 | 93.3 | 100.0 | 95.5 | 22 |
| ADOPTION | 42.9 | 91.5 | 86.9 | 628 | 33.6 | 33.3 | 37.2 | 556 | 34.8 | 83.6 | 78.7 | 122 |
| LONG TERM FOSTER CARE | 63.5 | 97.1 | 95.2 | 208 | 65.9 | 93.8 | 92.3 | 78 | 71.8 | 95.5 | 93.2 | 44 |
| TEMPORARY PLCMNT & RETURN HOME | 14.3 | 41.4 | 35.4 | 720 | 20.1 | 58.0 | 48.0 | 1,303 | 11.6 | 37.7 | 28.8 | 212 |
| INDEP LVNG-STILL FOSTER CARE PLCMT | 53.2 | 94.6 | 90.5 | 74 | 58.5 | 80.0 | 80.0 | 5 | 75.6 | 88.9 | 77.8 | 9 |
| INDEP LVNG-SUBSIDIZED LIVING | 64.8 | 100.0 | 94.1 | 17 | 55.2 | 100.0 | 100.0 | 10 | 83.1 | 100.0 | 100.0 | 5 |
| **CLIENTS BY CURRENT LEGAL STATUS** | | | | | | | | | | | | |
| INVALID LEGAL STATUS | 0.0 | 0.0 | 0.0 | 49 | 0.0 | 0.0 | 0.0 | 31 | 0.0 | 0.0 | 0.0 | 14 |
| VOLUNTARY PLACEMENT | 14.8 | 40.0 | 40.0 | 10 | 11.5 | 25.0 | 25.0 | 4 | 7.6 | 0.0 | 0.0 | 1 |
| TEMPORARY CUSTODY OF DCF | 27.2 | 64.8 | 59.5 | 1,257 | 24.0 | 64.1 | 58.8 | 1,758 | 20.9 | 51.1 | 42.8 | 276 |
| PERMANENT COMMITMENT | 64.3 | 97.8 | 94.9 | 372 | 53.2 | 90.7 | 86.7 | 150 | 59.5 | 95.0 | 92.4 | 119 |
| CUSTODY OF OTHER STATE | 13.8 | 60.0 | 20.0 | 5 | 18.3 | 38.4 | 38.4 | 11 | 11.8 | 25.0 | 0.0 | 4 |
| **CLIENTS BY RACE** | | | | | | | | | | | | |
| BLACK | 38.5 | 73.2 | 70.1 | 807 | 29.9 | 70.2 | 62.0 | 905 | 45.1 | 70.8 | 64.6 | 130 |
| WHITE | 31.7 | 69.5 | 63.2 | 881 | 23.4 | 83.8 | 57.8 | 985 | 25.2 | 58.7 | 51.6 | 283 |
| OTHER | 25.9 | 100.0 | 100.0 | 5 | 14.9 | 29.7 | 21.9 | 64 | 27.9 | 100.0 | 100.0 | 1 |
| **CLIENTS BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0-5 YRS | 17.7 | 55.4 | 48.3 | 513 | 18.9 | 57.2 | 46.7 | 836 | 14.9 | 50.3 | 40.7 | 145 |
| AGE GROUP 6-12 YRS | 37.4 | 74.8 | 71.3 | 616 | 27.3 | 66.4 | 59.9 | 760 | 30.2 | 62.5 | 57.2 | 152 |
| AGE GROUP 13-15 YRS | 43.3 | 78.1 | 74.4 | 297 | 30.2 | 69.4 | 65.1 | 324 | 39.6 | 66.7 | 61.7 | 60 |
| AGE GROUP 16-18 YRS | 50.2 | 85.3 | 80.8 | 245 | 39.4 | 78.7 | 74.3 | 230 | 59.0 | 87.8 | 81.6 | 49 |
| AGE GROUP 19+ YRS | 85.6 | 100.0 | 100.0 | 22 | 66.6 | 100.0 | 100.0 | 14 | 124.2 | 100.0 | 100.0 | 8 |
| **CLIENTS W/ GOAL OF ADOPTION BY RACE** | | | | | | | | | | | | |
| BLACK | 45.9 | 90.4 | 88.0 | 324 | 37.2 | 85.2 | 79.7 | 271 | 51.0 | 97.5 | 97.5 | 40 |
| WHITE | 39.8 | 92.7 | 85.7 | 300 | 31.5 | 85.1 | 79.4 | 282 | 26.9 | 76.8 | 69.5 | 82 |
| OTHER | 34.8 | 100.0 | 100.0 | 2 | 15.3 | 39.1 | 21.7 | 3 | 0.0 | 0.0 | 0.0 | 0 |
| **CLIENTS W/ GOAL OF ADOPTION BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0-5 YRS | 26.3 | 84.5 | 78.7 | 219 | 22.3 | 75.5 | 67.3 | 208 | 26.3 | 88.9 | 75.6 | 45 |
| AGE GROUP 6-12 YRS | 49.2 | 94.8 | 92.2 | 308 | 40.9 | 88.9 | 82.3 | 252 | 38.3 | 80.3 | 80.3 | 61 |
| AGE GROUP 13-15 YRS | 58.0 | 96.1 | 92.1 | 76 | 37.8 | 84.1 | 81.0 | 63 | 42.9 | 80.0 | 80.0 | 15 |
| AGE GROUP 16-18 YRS | 67.0 | 100.0 | 95.7 | 23 | 44.1 | 87.9 | 87.9 | 33 | 82.4 | 100.0 | 100.0 | 1 |
| AGE GROUP 19+ YRS | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 |
| **PERM COMMIT CLIENTS BY RACE** | | | | | | | | | | | | |
| BLACK | 70.9 | 97.4 | 96.9 | 195 | 60.4 | 94.2 | 91.3 | 69 | 73.0 | 95.9 | 95.9 | 49 |
| WHITE | 57.2 | 98.3 | 92.7 | 177 | 49.8 | 92.1 | 88.2 | 76 | 50.0 | 94.3 | 90.0 | 70 |
| OTHER | 0.0 | 0.0 | 0.0 | 0 | 8.8 | 20.0 | 0.0 | 5 | 0.0 | 0.0 | 0.0 | 0 |
| **PERM COMMIT CLIENTS BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0-5 YRS | 31.9 | 95.1 | 89.0 | 82 | 26.7 | 84.2 | 71.1 | 38 | 27.4 | 90.9 | 77.3 | 22 |
| AGE GROUP 6-12 YRS | 67.9 | 98.1 | 96.2 | 156 | 50.0 | 89.1 | 87.3 | 55 | 53.8 | 96.0 | 96.0 | 50 |
| AGE GROUP 13-15 YRS | 76.2 | 98.8 | 96.5 | 86 | 63.5 | 96.0 | 96.0 | 25 | 63.0 | 91.7 | 91.7 | 24 |
| AGE GROUP 16-18 YRS | 85.7 | 100.0 | 97.8 | 46 | 81.8 | 96.2 | 96.2 | 26 | 94.2 | 100.0 | 100.0 | 20 |
| AGE GROUP 19+ YRS | 117.9 | 100.0 | 100.0 | 2 | 84.8 | 100.0 | 100.0 | 6 | 128.8 | 100.0 | 100.0 | 3 |
| **PERM COMMIT & ADPT CLIENTS BY RACE** | | | | | | | | | | | | |
| BLACK | 59.5 | 97.6 | 96.8 | 124 | 44.2 | 95.5 | 90.9 | 44 | 46.3 | 96.7 | 96.7 | 30 |
| WHITE | 52.3 | 97.9 | 90.9 | 143 | 42.6 | 91.1 | 88.9 | 46 | 29.9 | 89.7 | 82.1 | 39 |
| OTHER | 0.0 | 0.0 | 0.0 | 0 | 8.8 | 20.0 | 0.0 | 5 | 0.0 | 0.0 | 0.0 | 0 |
| **PERM COMMIT & ADPT CLIENTS BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0-5 YRS | 32.1 | 95.0 | 88.8 | 80 | 26.7 | 84.4 | 71.9 | 32 | 27.4 | 90.9 | 77.3 | 22 |
| AGE GROUP 6-12 YRS | 63.0 | 98.4 | 96.0 | 125 | 51.5 | 92.3 | 92.3 | 39 | 42.4 | 94.9 | 94.9 | 39 |
| AGE GROUP 13-15 YRS | 67.5 | 100.0 | 95.8 | 48 | 48.2 | 93.3 | 93.3 | 15 | 37.4 | 87.5 | 87.5 | 8 |
| AGE GROUP 16-18 YRS | 84.0 | 100.0 | 92.9 | 14 | 40.4 | 87.5 | 87.5 | 8 | 0.0 | 0.0 | 0.0 | 0 |
| AGE GROUP 19+ YRS | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 |
| **ALL CLIENTS** | 34.9 | 71.4 | 66.6 | 1,693 | 26.1 | 65.6 | 58.4 | 1,954 | 31.4 | 62.6 | 55.8 | 414 |
| **ALL CLIENTS EXCEPT IN CUSTODY OF FOSTER PARENT & SUBSIDIZED LIVING** | 33.4 | 70.2 | 65.4 | 1,628 | 25.9 | 65.4 | 58.2 | 1,942 | 27.2 | 59.9 | 53.0 | 387 |

Data source: Client Information System (CIS) ad hoc runs.
* ALOS  = Average Length of Stay in months calculated from the Initial Placement in Substitute Care Date to the As of Date in the report title.
Averages with an N of less than 30 are considered statistically unstable.
% 12+ = Percent of clients in care whose current length of stay is 12 months or more.
% 15+ = Percent of clients in care whose current length of stay is 15 months or more.
N      = Number of clients in care for whom the average and percents are calculated. Includes clients with a service status of Inactive - Runaway.
Clients are unduplicated for each district and statewide.
Totals for each district will not sum to the statewide total.

Note: Community Based Care data are based on units.
    4 CBC includes 048007, 048497, 048498, and 048499.
    8 CBC includes 085Y01, 085Y02, 085Y03, and 085Y04.

NOTE: THIS DOES NOT REPRESENT TOTAL LENGTH OF CARE,
BUT ONLY THE TIME SPENT IN CARE TO DATE FOR ACTIVE CLIENTS.
AVERAGES CAN BE GREATLY SKEWED BY A FEW OUTLYING (LONG TERM) CASES.

JU0008

**Length of Stay (months) for Foster Care - Substitute Care Cases**
**Clients Currently ACTIVE in Care as of 1-13-2000**

| DISTRICT | 8 CBC | | | | 9 | | | | 10 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | ALOS* | % 12+ | % 15+ | N | ALOS* | % 12+ | % 15+ | N | ALOS* | % 12+ | % 15+ | N |
| **CLIENTS WITH A CURRENT GOAL OF** | | | | | | | | | | | | |
| PERM CUSTODY OF FOSTER PARENT | 68.9 | 100.0 | 100.0 | 6 | 54.2 | 100.0 | 100.0 | 2 | 0.0 | 0.0 | 0.0 | 0 |
| ADOPTION | 34.5 | 93.8 | 93.8 | 32 | 43.6 | 94.6 | 92.9 | 112 | 38.8 | 93.1 | 89.9 | 306 |
| LONG TERM FOSTER CARE | 44.2 | 88.9 | 77.8 | 18 | 70.7 | 89.9 | 88.2 | 119 | 61.1 | 95.0 | 94.0 | 501 |
| TEMPORARY PLCMNT & RETURN HOME | 14.4 | 50.5 | 39.3 | 107 | 27.4 | 68.9 | 59.4 | 347 | 20.6 | 55.7 | 49.0 | 716 |
| INDEP LVNG-STILL FOSTER CARE PLCMT | 68.3 | 100.0 | 100.0 | 13 | 86.4 | 100.0 | 90.9 | 11 | 54.7 | 90.9 | 90.9 | 44 |
| INDEP LVNG-SUBSIDIZED LIVING | 72.0 | 100.0 | 100.0 | 2 | 65.4 | 88.2 | 88.2 | 17 | 66.4 | 94.7 | 94.7 | 19 |
| **CLIENTS BY CURRENT LEGAL STATUS** | | | | | | | | | | | | |
| INVALID LEGAL STATUS | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 6 | 0.0 | 0.0 | 0.0 | 15 |
| VOLUNTARY PLACEMENT | 0.0 | 0.0 | 0.0 | 0 | 220.6 | 100.0 | 100.0 | 1 | 13.5 | 50.0 | 50.0 | 2 |
| TEMPORARY CUSTODY OF DCF | 18.9 | 57.1 | 46.6 | 133 | 31.7 | 72.0 | 64.0 | 436 | 31.6 | 70.9 | 65.8 | 1,211 |
| PERMANENT COMMITMENT | 52.8 | 100.0 | 100.0 | 45 | 65.2 | 97.4 | 95.5 | 156 | 60.2 | 98.2 | 98.2 | 335 |
| CUSTODY OF OTHER STATE | 0.0 | 0.0 | 0.0 | 0 | 58.6 | 88.9 | 88.9 | 9 | 67.4 | 100.0 | 91.3 | 23 |
| **CLIENTS BY RACE** | | | | | | | | | | | | |
| BLACK | 35.8 | 75.7 | 65.7 | 70 | 46.8 | 85.5 | 79.5 | 352 | 41.3 | 79.7 | 75.1 | 987 |
| WHITE | 22.1 | 62.6 | 56.1 | 107 | 33.8 | 71.1 | 64.2 | 246 | 32.5 | 72.1 | 69.3 | 596 |
| OTHER | 19.7 | 100.0 | 100.0 | 1 | 14.7 | 40.0 | 40.0 | 10 | 12.7 | 33.3 | 33.3 | 3 |
| **CLIENTS BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0-5 YRS | 11.6 | 43.1 | 29.3 | 58 | 21.7 | 71.1 | 58.4 | 173 | 17.4 | 56.5 | 49.9 | 363 |
| AGE GROUP 6-12 YRS | 24.5 | 78.5 | 72.5 | 51 | 39.7 | 77.0 | 72.5 | 204 | 38.3 | 80.4 | 76.8 | 570 |
| AGE GROUP 13-15 YRS | 34.4 | 74.4 | 69.2 | 39 | 52.2 | 83.8 | 81.0 | 105 | 45.2 | 82.9 | 78.7 | 328 |
| AGE GROUP 16-18 YRS | 49.8 | 92.8 | 85.2 | 27 | 54.1 | 86.1 | 82.2 | 101 | 51.7 | 86.2 | 84.5 | 304 |
| AGE GROUP 19+ YRS | 93.2 | 100.0 | 100.0 | 3 | 87.2 | 100.0 | 100.0 | 25 | 72.8 | 100.0 | 100.0 | 21 |
| **CLIENTS W/ GOAL OF ADOPTION BY RACE** | | | | | | | | | | | | |
| BLACK | 35.7 | 87.5 | 87.5 | 16 | 43.3 | 95.8 | 93.0 | 71 | 38.9 | 93.4 | 88.8 | 196 |
| WHITE | 34.1 | 100.0 | 100.0 | 15 | 44.4 | 92.5 | 92.5 | 40 | 33.0 | 93.5 | 92.6 | 108 |
| OTHER | 19.7 | 100.0 | 100.0 | 1 | 30.3 | 100.0 | 100.0 | 1 | 18.5 | 50.0 | 50.0 | 2 |
| **CLIENTS W/ GOAL OF ADOPTION BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0-5 YRS | 29.4 | 100.0 | 100.0 | 7 | 32.6 | 90.9 | 84.8 | 33 | 26.9 | 86.8 | 82.5 | 114 |
| AGE GROUP 6-12 YRS | 38.3 | 94.4 | 94.4 | 18 | 48.5 | 95.0 | 95.0 | 60 | 39.5 | 98.9 | 93.8 | 181 |
| AGE GROUP 13-15 YRS | 34.8 | 85.7 | 85.7 | 7 | 44.4 | 100.0 | 100.0 | 15 | 48.8 | 100.0 | 100.0 | 20 |
| AGE GROUP 16-18 YRS | 0.0 | 0.0 | 0.0 | 0 | 58.4 | 100.0 | 100.0 | 4 | 79.5 | 90.0 | 90.0 | 10 |
| AGE GROUP 19+ YRS | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 | 17.4 | 100.0 | 100.0 | 1 |
| **PERM COMMIT CLIENTS BY RACE** | | | | | | | | | | | | |
| BLACK | 58.4 | 100.0 | 100.0 | 23 | 68.3 | 98.2 | 96.4 | 111 | 65.4 | 98.5 | 98.5 | 203 |
| WHITE | 49.1 | 100.0 | 100.0 | 22 | 58.1 | 95.5 | 93.2 | 44 | 52.4 | 98.5 | 98.5 | 131 |
| OTHER | 0.0 | 0.0 | 0.0 | 0 | 30.3 | 100.0 | 100.0 | 1 | 10.2 | 0.0 | 0.0 | 1 |
| **PERM COMMIT CLIENTS BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0-5 YRS | 26.3 | 100.0 | 100.0 | 8 | 34.7 | 100.0 | 93.3 | 30 | 32.6 | 93.8 | 93.8 | 64 |
| AGE GROUP 6-12 YRS | 40.7 | 100.0 | 100.0 | 15 | 60.3 | 94.9 | 94.9 | 59 | 55.2 | 99.3 | 99.3 | 150 |
| AGE GROUP 13-15 YRS | 72.5 | 100.0 | 100.0 | 10 | 75.5 | 100.0 | 97.3 | 37 | 74.8 | 100.0 | 100.0 | 68 |
| AGE GROUP 16-18 YRS | 63.2 | 100.0 | 100.0 | 11 | 84.6 | 96.0 | 96.0 | 25 | 89.7 | 98.0 | 98.0 | 50 |
| AGE GROUP 19+ YRS | 135.6 | 100.0 | 100.0 | 1 | 132.1 | 100.0 | 100.0 | 5 | 73.2 | 100.0 | 100.0 | 3 |
| **PERM COMMT & ADPT CLIENTS BY RACE** | | | | | | | | | | | | |
| BLACK | 41.9 | 100.0 | 100.0 | 11 | 45.8 | 96.6 | 93.1 | 58 | 46.1 | 97.1 | 97.1 | 104 |
| WHITE | 39.6 | 100.0 | 100.0 | 11 | 44.1 | 95.8 | 95.8 | 24 | 38.4 | 97.0 | 97.0 | 67 |
| OTHER | 0.0 | 0.0 | 0.0 | 0 | 30.3 | 100.0 | 100.0 | 1 | 10.2 | 0.0 | 0.0 | 1 |
| **PERM COMMT & ADPT CLIENTS BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0-5 YRS | 27.0 | 100.0 | 100.0 | 6 | 34.9 | 100.0 | 92.3 | 26 | 32.0 | 93.4 | 93.4 | 61 |
| AGE GROUP 6-12 YRS | 43.8 | 100.0 | 100.0 | 13 | 50.5 | 93.5 | 93.5 | 46 | 45.2 | 98.9 | 98.9 | 91 |
| AGE GROUP 13-15 YRS | 54.9 | 100.0 | 100.0 | 3 | 42.2 | 100.0 | 100.0 | 9 | 57.1 | 100.0 | 100.0 | 14 |
| AGE GROUP 16-18 YRS | 0.0 | 0.0 | 0.0 | 0 | 61.2 | 100.0 | 100.0 | 2 | 87.7 | 83.3 | 83.3 | 6 |
| AGE GROUP 19+ YRS | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 |
| **ALL CLIENTS** | 27.5 | 68.0 | 60.1 | 178 | 41.1 | 78.9 | 72.7 | 608 | 38.0 | 76.8 | 72.8 | 1,586 |
| **ALL CLIENTS EXCEPT IN CUSTODY OF FOSTER PARENT & SUBSIDIZED LIVING** | 25.5 | 66.5 | 58.2 | 170 | 40.3 | 78.6 | 72.2 | 589 | 37.6 | 76.6 | 72.6 | 1,567 |

Data source = Client Information System (CIS) ad hoc runs.
* ALOS  = Average Length of Stay in months calculated from the Initial Placement in
             Substitute Care Date to the As of Date in the report title.
             Averages with an N of less than 30 are considered statistically unstable.
% 12+ = Percent of clients in care whose current length of stay is 12 months or more.
% 15+ = Percent of clients in care whose current length of stay is 15 months or more.
N        = Number of clients in care for whom the average and percents are calculated.
             Includes clients with a service status of Inactive - Runaway.
Clients are unduplicated for each district and statewide.
Totals for each district will not sum to the statewide total.

Note: Community Based Care data are based on units.
        4 CBC includes 048007, 048497, 048498, and 048499.
        8 CBC includes 085Y01, 085Y02, 085Y03, and 085Y04.

NOTE: THIS DOES NOT REPRESENT TOTAL LENGTH OF CARE,
BUT ONLY THE TIME SPENT IN CARE TO DATE FOR ACTIVE CLIENTS.
AVERAGES CAN BE GREATLY SKEWED BY A FEW OUTLYING (LONG TERM) CASES.

J000009

**Length of Stay (months) for Foster Care - Substitute Care Cases**
**Clients Currently ACTIVE in Care as of 1-13-2000**

| DISTRICT | 11A | | | | 11B | | | | 12 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | ALOS* | % 12+ | % 15+ | N | ALOS* | % 12+ | % 15+ | N | ALOS* | % 12+ | % 15+ | N |
| **CLIENTS WITH A CURRENT GOAL OF** | | | | | | | | | | | | |
| PERM CUSTODY OF FOSTER PARENT | 51.2 | 100.0 | 100.0 | 4 | 0.0 | 0.0 | 0.0 | 0 | 63.6 | 100.0 | 100.0 | 1 |
| ADOPTION | 55.3 | 94.5 | 90.5 | 598 | 22.0 | 73.7 | 73.7 | 19 | 24.9 | 66.7 | 59.6 | 57 |
| LONG TERM FOSTER CARE | 77.0 | 94.0 | 92.8 | 585 | 57.5 | 80.0 | 80.0 | 5 | 66.7 | 93.0 | 88.4 | 43 |
| TEMPORARY PLCMNT & RETURN HOME | 29.0 | 80.1 | 69.1 | 583 | 8.8 | 18.7 | 8.3 | 12 | 17.0 | 47.5 | 40.1 | 202 |
| INDEP LVNG-STILL FOSTER CARE PLCMT | 67.9 | 89.1 | 89.1 | 64 | 0.0 | 0.0 | 0.0 | 0 | 63.2 | 63.6 | 63.6 | 11 |
| INDEP LVNG-SUBSIDIZED LIVING | 97.1 | 100.0 | 100.0 | 37 | 115.3 | 100.0 | 100.0 | 1 | 94.9 | 100.0 | 100.0 | 1 |
| **CLIENTS BY CURRENT LEGAL STATUS** | | | | | | | | | | | | |
| INVALID LEGAL STATUS | 0.0 | 0.0 | 0.0 | 49 | 0.0 | 0.0 | 0.0 | 3 | 0.0 | 0.0 | 0.0 | 1 |
| VOLUNTARY PLACEMENT | 83.8 | 85.7 | 85.7 | 7 | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 |
| TEMPORARY CUSTODY OF DCF | 47.9 | 87.4 | 81.3 | 1,227 | 12.0 | 45.5 | 40.9 | 22 | 18.9 | 47.8 | 40.6 | 249 |
| PERMANENT COMMITMENT | 75.5 | 96.7 | 95.4 | 546 | 57.5 | 91.7 | 91.7 | 12 | 59.0 | 96.6 | 91.4 | 58 |
| CUSTODY OF OTHER STATE | 56.8 | 86.4 | 86.4 | 22 | 0.0 | 0.0 | 0.0 | 0 | 57.2 | 100.0 | 100.0 | 7 |
| **CLIENTS BY RACE** | | | | | | | | | | | | |
| BLACK | 58.2 | 91.5 | 86.3 | 1,256 | 14.0 | 33.3 | 33.3 | 3 | 41.2 | 71.3 | 67.8 | 87 |
| WHITE | 51.0 | 87.0 | 82.2 | 585 | 27.4 | 58.8 | 55.9 | 34 | 21.9 | 52.3 | 44.1 | 222 |
| OTHER | 18.1 | 80.0 | 60.0 | 10 | 0.0 | 0.0 | 0.0 | 0 | 20.8 | 83.3 | 83.3 | 6 |
| **CLIENTS BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0-5 YRS | 26.2 | 80.5 | 71.0 | 365 | 11.7 | 29.4 | 23.5 | 17 | 15.0 | 43.5 | 34.8 | 92 |
| AGE GROUP 6-12 YRS | 49.9 | 88.5 | 82.8 | 646 | 20.3 | 80.0 | 80.0 | 10 | 19.8 | 52.4 | 46.7 | 105 |
| AGE GROUP 13-15 YRS | 63.8 | 91.7 | 89.4 | 349 | 31.3 | 66.7 | 66.7 | 3 | 36.3 | 73.3 | 68.3 | 60 |
| AGE GROUP 16-18 YRS | 76.9 | 96.6 | 93.1 | 377 | 98.5 | 85.7 | 85.7 | 7 | 44.2 | 73.6 | 68.0 | 53 |
| AGE GROUP 19+ YRS | 88.3 | 100.0 | 100.0 | 114 | 0.0 | 0.0 | 0.0 | 0 | 119.1 | 100.0 | 100.0 | 5 |
| **CLIENTS W/ GOAL OF ADOPTION BY RACE** | | | | | | | | | | | | |
| BLACK | 57.7 | 94.5 | 91.2 | 422 | 14.0 | 33.3 | 33.3 | 3 | 30.1 | 55.0 | 55.0 | 20 |
| WHITE | 50.6 | 95.3 | 89.5 | 171 | 23.5 | 81.3 | 81.3 | 16 | 22.0 | 70.6 | 58.8 | 34 |
| OTHER | 16.9 | 80.0 | 60.0 | 5 | 0.0 | 0.0 | 0.0 | 0 | 24.0 | 100.0 | 100.0 | 3 |
| **CLIENTS W/ GOAL OF ADOPTION BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0-5 YRS | 30.0 | 87.0 | 79.9 | 184 | 20.3 | 66.7 | 66.7 | 6 | 21.2 | 65.0 | 45.0 | 20 |
| AGE GROUP 6-12 YRS | 62.4 | 97.4 | 94.4 | 305 | 20.3 | 90.0 | 90.0 | 10 | 27.2 | 71.4 | 71.4 | 28 |
| AGE GROUP 13-15 YRS | 71.1 | 98.9 | 96.6 | 87 | 31.3 | 66.7 | 66.7 | 3 | 26.4 | 66.7 | 66.7 | 6 |
| AGE GROUP 16-18 YRS | 106.8 | 100.0 | 100.0 | 22 | 0.0 | 0.0 | 0.0 | 0 | 25.9 | 33.3 | 33.3 | 3 |
| AGE GROUP 19+ YRS | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 |
| **PERM COMMIT CLIENTS BY RACE** | | | | | | | | | | | | |
| BLACK | 78.6 | 97.0 | 96.5 | 398 | 18.5 | 50.0 | 50.0 | 2 | 83.9 | 95.0 | 95.0 | 20 |
| WHITE | 67.9 | 97.3 | 93.8 | 146 | 65.3 | 100.0 | 100.0 | 10 | 46.9 | 97.2 | 88.9 | 36 |
| OTHER | 10.0 | 0.0 | 0.0 | 2 | 0.0 | 0.0 | 0.0 | 0 | 27.6 | 100.0 | 100.0 | 2 |
| **PERM COMMIT CLIENTS BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0-5 YRS | 32.9 | 88.1 | 85.1 | 101 | 24.8 | 75.0 | 75.0 | 4 | 35.1 | 100.0 | 85.7 | 7 |
| AGE GROUP 6-12 YRS | 67.7 | 97.6 | 96.7 | 209 | 32.1 | 100.0 | 100.0 | 3 | 31.0 | 100.0 | 100.0 | 17 |
| AGE GROUP 13-15 YRS | 87.3 | 99.0 | 97.9 | 96 | 68.5 | 100.0 | 100.0 | 4 | 61.7 | 92.9 | 92.9 | 14 |
| AGE GROUP 16-18 YRS | 110.9 | 100.0 | 98.9 | 89 | 106.7 | 100.0 | 100.0 | 1 | 80.0 | 93.8 | 81.3 | 16 |
| AGE GROUP 19+ YRS | 107.8 | 100.0 | 100.0 | 51 | 0.0 | 0.0 | 0.0 | 0 | 126.6 | 100.0 | 100.0 | 4 |
| **PERM COMMIT & ADPT CLIENTS BY RACE** | | | | | | | | | | | | |
| BLACK | 65.0 | 95.4 | 95.4 | 239 | 18.8 | 50.0 | 50.0 | 2 | 28.4 | 83.3 | 83.3 | 6 |
| WHITE | 56.0 | 96.8 | 91.5 | 94 | 37.7 | 100.0 | 100.0 | 6 | 30.1 | 95.0 | 90.0 | 20 |
| OTHER | 10.0 | 0.0 | 0.0 | 2 | 0.0 | 0.0 | 0.0 | 0 | 27.6 | 100.0 | 100.0 | 2 |
| **PERM COMMIT & ADPT CLIENTS BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0-5 YRS | 31.9 | 86.8 | 83.5 | 91 | 24.8 | 75.0 | 75.0 | 4 | 35.1 | 100.0 | 85.7 | 7 |
| AGE GROUP 6-12 YRS | 67.6 | 98.3 | 97.7 | 177 | 32.1 | 100.0 | 100.0 | 3 | 25.7 | 100.0 | 100.0 | 14 |
| AGE GROUP 13-15 YRS | 80.5 | 98.1 | 96.3 | 54 | 68.5 | 100.0 | 100.0 | 1 | 29.4 | 80.0 | 80.0 | 5 |
| AGE GROUP 16-18 YRS | 121.9 | 100.0 | 100.0 | 13 | 0.0 | 0.0 | 0.0 | 0 | 37.9 | 50.0 | 50.0 | 2 |
| AGE GROUP 19+ YRS | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 |
| **ALL CLIENTS** | 55.7 | 89.9 | 84.9 | 1,851 | 26.3 | 56.8 | 54.1 | 37 | 27.2 | 58.1 | 51.4 | 315 |
| **ALL CLIENTS EXCEPT IN CUSTODY OF FOSTER PARENT & SUBSIDIZED LIVING** | 54.9 | 89.7 | 84.5 | 1,810 | 23.9 | 55.8 | 52.8 | 36 | 26.9 | 57.8 | 51.1 | 313 |

Data source: Client Information System (CIS) ad hoc runs.

* ALOS = Average Length of Stay in months calculated from the Initial Placement in Substitute Care Date to the As of Date in the report title.

Averages with an N of less than 30 are considered statistically unstable.

% 12+ = Percent of clients whose current length of stay is 12 months or more.

% 15+ = Percent of clients in care whose current length of stay is 15 months or more.

N = Number of clients in care for whom the average and percents are calculated.

Includes clients with a service status of inactive - Runaway.

Clients are unduplicated for each district and statewide.

Totals for each district will not sum to the statewide total.

Note: Community Based Care data are based on units.
    4 CBC includes 048007, 048497, 048498, and 048499.
    8 CBC includes 085Y01, 085Y02, 085Y03, and 085Y04.

NOTE: THIS DOES NOT REPRESENT TOTAL LENGTH OF CARE,
BUT ONLY THE TIME SPENT IN CARE TO DATE FOR ACTIVE CLIENTS.
AVERAGES CAN BE GREATLY SKEWED BY A FEW OUTLYING (LONG TERM) CASES.

J00010

### Length of Stay (months) for Foster Care - Substitute Care Cases
### Clients Currently ACTIVE in Care as of 1-13-2000

| DISTRICT | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | **13** | | | | **14** | | | | **15** | | |
| | ALOS* | % 12+ | % 15+ | N | ALOS* | % 12+ | % 15+ | N | ALOS* | % 12+ | % 15+ | N |
| **CLIENTS WITH A CURRENT GOAL OF** | | | | | | | | | | | | |
| PERM CUSTODY OF FOSTER PARENT | | | | | 55.3 | 75.0 | 75.0 | | | 100.0 | 100.0 | |
| ADOPTION | | | | | 40.3 | 80.9 | 74.5 | 47 | 46.1 | 95.9 | 95.8 | 45 |
| LONG TERM FOSTER CARE | 68.2 | 93.9 | 90.4 | 114 | 63.2 | 92.2 | 90.9 | 77 | 73.6 | 100.0 | 100.0 | 34 |
| TEMPORARY PLCMNT & RETURN HOME | 16.5 | 68.9 | | | 23.8 | 68.1 | 58.8 | 388 | 44.4 | 46.9 | 31.1 | 222 |
| INDEP LVNG-STILL FOSTER CARE PLCMT | 38.3 | 25.0 | 50.0 | | 43.2 | 100.0 | 100.0 | 2 | 0.0 | 0.0 | 0.0 | 0 |
| INDEP LVNG-SUBSIDIZED LIVING | 0.0 | 0.0 | | | 26.0 | 100.0 | 100.0 | 1 | 39.6 | 100.0 | 100.0 | 2 |
| **CLIENTS BY CURRENT LEGAL STATUS** | | | | | | | | | | | | |
| INVALID LEGAL STATUS | 0.0 | | | | 0.0 | 0.0 | 0.0 | | 0.0 | 0.0 | 0.0 | 0 |
| VOLUNTARY PLACEMENT | 0.0 | | | | 59.6 | 100.0 | 100.0 | | 0.0 | 0.0 | 0.0 | 0 |
| TEMPORARY CUSTODY OF DCF | 20.4 | 58.0 | 52.3 | 530 | 23.6 | 69.0 | 60.1 | 429 | 18.5 | 53.0 | 41.8 | 251 |
| PERMANENT COMMITMENT | 70.0 | 97.3 | 96.9 | 373 | 89.0 | 98.2 | 98.2 | 56 | 104.5 | 97.9 | 87.5 | 48 |
| CUSTODY OF OTHER STATE | 45.4 | 100.0 | 100.0 | | 20.3 | 62.5 | 62.5 | 8 | 7.2 | 100.0 | 100.0 | 1 |
| **CLIENTS BY RACE** | | | | | | | | | | | | |
| BLACK | 32.1 | 67.5 | 59.4 | 256 | 42.5 | 80.3 | 77.3 | 132 | 29.3 | 50.8 | 48.0 | 102 |
| WHITE | 21.6 | 59.0 | 45.5 | 653 | 28.0 | 70.6 | 61.8 | 388 | 24.9 | 63.2 | 51.0 | 196 |
| OTHER | 28.4 | 46.7 | 46.7 | | 13.4 | 100.0 | 0.0 | 1 | 30.9 | 50.0 | 50.0 | 6 |
| **CLIENTS BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0- 5 YRS | 15.7 | 50.8 | 49.6 | 252 | 17.5 | 59.7 | 48.0 | 196 | 12.3 | 45.2 | 33.7 | 104 |
| AGE GROUP 6-12 YRS | 22.7 | 58.4 | 52.3 | 344 | 30.7 | 78.4 | 71.9 | 171 | 22.2 | 57.7 | 47.4 | 97 |
| AGE GROUP 13-15 YRS | 28.9 | 62.9 | 58.3 | 167 | 42.7 | 76.3 | 71.3 | 80 | 30.4 | 63.8 | 51.1 | 47 |
| AGE GROUP 16-18 YRS | 37.5 | 81.4 | 75.9 | 145 | 58.2 | 93.1 | 90.3 | 72 | 48.2 | 86.5 | 76.9 | 52 |
| AGE GROUP 19+ YRS | 96.0 | 100.0 | 100.0 | | 99.9 | 100.0 | 100.0 | 2 | 131.9 | 100.0 | 100.0 | 4 |
| **CLIENTS W/ GOAL OF ADOPTION BY RACE** | | | | | | | | | | | | |
| BLACK | 54.0 | 97.8 | 97.8 | | 49.4 | 100.0 | 100.0 | 14 | 59.7 | 94.7 | 94.7 | 19 |
| WHITE | 29.0 | 95.5 | 93.9 | 66 | 36.4 | 72.7 | 63.6 | 33 | 36.1 | 98.2 | 98.2 | 26 |
| OTHER | 0.0 | | | | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 |
| **CLIENTS W/ GOAL OF ADOPTION BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0- 5 YRS | 28.6 | 96.7 | 96.7 | 30 | 20.4 | 75.0 | 60.0 | 20 | 24.3 | 91.7 | 91.7 | 12 |
| AGE GROUP 6-12 YRS | 42.3 | 96.7 | 96.7 | | 40.1 | 80.0 | 80.0 | 20 | 43.4 | 100.0 | 100.0 | 20 |
| AGE GROUP 13-15 YRS | 59.3 | 93.3 | 93.3 | 15 | 88.8 | 100.0 | 100.0 | 4 | 59.8 | 90.9 | 90.9 | 11 |
| AGE GROUP 16-18 YRS | 74.5 | 100.0 | 100.0 | | 112.5 | 100.0 | 100.0 | 3 | 83.5 | 100.0 | 100.0 | 2 |
| AGE GROUP 19+ YRS | 0.0 | | | | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 |
| **PERM COMMIT CLIENTS BY RACE** | | | | | | | | | | | | |
| BLACK | 83.5 | 100.0 | 100.0 | 34 | 97.6 | 100.0 | 100.0 | 22 | 77.5 | 100.0 | 87.3 | 16 |
| WHITE | 58.3 | 94.9 | 96.2 | | 83.4 | 97.1 | 97.1 | 34 | 156.0 | 96.9 | 90.6 | 32 |
| OTHER | 0.0 | 0.0 | | | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 |
| **PERM COMMIT CLIENTS BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0- 5 YRS | 28.4 | 100.0 | 86.2 | | 34.8 | 100.0 | 100.0 | 7 | 21.0 | 80.0 | 80.0 | 5 |
| AGE GROUP 6-12 YRS | 70.4 | 95.2 | 95.2 | | 88.2 | 100.0 | 100.0 | 19 | 47.6 | 100.0 | 100.0 | 12 |
| AGE GROUP 13-15 YRS | 64.3 | 100.0 | 100.0 | 20 | 108.2 | 100.0 | 100.0 | 12 | 164.7 | 100.0 | 85.7 | 14 |
| AGE GROUP 16-18 YRS | 80.2 | 96.2 | 95.2 | 21 | 101.0 | 94.1 | 94.1 | 17 | 94.5 | 100.0 | 80.0 | 15 |
| AGE GROUP 19+ YRS | 119.9 | 100.0 | 100.0 | | 49.2 | 100.0 | 100.0 | 1 | 120.3 | 100.0 | 100.0 | 2 |
| **PERM COMMT & ADPT CLIENTS BY RACE** | | | | | | | | | | | | |
| BLACK | 78.0 | 100.0 | 100.0 | 17 | 91.7 | 100.0 | 100.0 | 4 | 94.0 | 100.0 | 100.0 | 7 |
| WHITE | 34.1 | 100.0 | 100.0 | | 76.5 | 100.0 | 100.0 | 8 | 117.2 | 100.0 | 100.0 | 16 |
| OTHER | 0.0 | | | | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 |
| **PERM COMMT & ADPT CLIENTS BY AGE** | | | | | | | | | | | | |
| AGE GROUP 0- 5 YRS | 32.6 | 100.0 | 100.0 | 4 | 35.8 | 100.0 | 100.0 | 2 | 25.3 | 100.0 | 100.0 | 4 |
| AGE GROUP 6-12 YRS | 75.2 | 100.0 | 100.0 | 15 | 78.4 | 100.0 | 100.0 | 6 | 43.2 | 100.0 | 100.0 | 9 |
| AGE GROUP 13-15 YRS | 44.7 | 100.0 | 100.0 | | 111.1 | 100.0 | 100.0 | 1 | 173.3 | 100.0 | 100.0 | 8 |
| AGE GROUP 16-18 YRS | 105.6 | 100.0 | 100.0 | | 112.5 | 100.0 | 100.0 | 3 | 139.8 | 100.0 | 100.0 | 2 |
| AGE GROUP 19+ YRS | 0.0 | 0.0 | 0.0 | | 0.0 | 0.0 | 0.0 | 0 | 0.0 | 0.0 | 0.0 | 0 |
| **ALL CLIENTS** | 24.4 | 61.1 | 53.6 | 915 | 31.7 | 73.1 | 65.5 | 521 | 26.0 | 58.9 | 49.0 | 304 |
| ALL CLIENTS EXCEPT IN CUSTODY OF | | | | | | | | | | | | |
| FOSTER PARENT & SUBSIDIZED LIVING | 24.4 | 61.0 | 53.5 | 913 | 31.3 | 73.0 | 65.2 | 512 | 25.9 | 58.5 | 48.5 | 301 |

Data source: Client Information System (CIS) ad hoc runs.

* ALOS = Average Length of Stay in months calculated from the Initial Placement in Substitute Care Date to the As of Date in the report title.
  Averages with an N of less than 30 are considered statistically unstable.
% 12+ = Percent of clients in care whose current length of stay is 12 months or more.
% 15+ = Percent of clients in care whose current length of stay is 15 months or more.
N = Number of clients in care for whom the average and percents are calculated. Includes clients with a service status of Inactive - Runaway.

Clients are unduplicated for each district and statewide.
Totals for each district will not sum to the statewide total.

Note: Community Based Care data are based on units.
   4 CSC includes 048007, 048497, 048498, and 048499.
   8 CBC includes 085Y01, 085Y02, 085Y03, and 085Y04.

NOTE: THIS DOES NOT REPRESENT TOTAL LENGTH OF CARE,
BUT ONLY THE TIME SPENT IN CARE TO DATE FOR ACTIVE CLIENTS.
AVERAGES CAN BE GREATLY SKEWED BY A FEW OUTLYING (LONG TERM) CASES.

J000011

**Length of Stay (months) for Foster Care - Substitute Care Cases**
**Clients Currently ACTIVE in Care as of 1-13-2000**

| | Total | | | |
|---|---|---|---|---|
| | ALOS* | % 12+ | % 15+ | N |
| **CLIENTS WITH A CURRENT GOAL OF** | | | | |
| PERM CUSTODY OF FOSTER PARENT | 74.9 | 98.2 | 97.3 | 110 |
| ADOPTION | 41.5 | 90.6 | 86.4 | 3,430 |
| LONG TERM FOSTER CARE | 66.4 | 94.4 | 92.8 | 2,199 |
| TEMPORARY PLCMNT & RETURN HOME | 19.6 | 55.2 | 46.8 | 7,182 |
| INDEP LVNG-STILL FOSTER CARE PLCMT | 57.9 | 88.4 | 86.5 | 310 |
| INDEP LVNG-SUBSIDIZED LIVING | 75.2 | 97.3 | 96.6 | 149 |
| **CLIENTS BY CURRENT LEGAL STATUS** | | | | |
| INVALID LEGAL STATUS | 0.0 | 0.0 | 0.0 | 251 |
| VOLUNTARY PLACEMENT | 47.1 | 68.7 | 66.7 | 54 |
| TEMPORARY CUSTODY OF DCF | 27.9 | 67.0 | 60.2 | 10,475 |
| PERMANENT COMMITMENT | 65.3 | 96.7 | 94.8 | 2,454 |
| CUSTODY OF OTHER STATE | 43.9 | 77.4 | 71.9 | 146 |
| **CLIENTS BY RACE** | | | | |
| BLACK | 41.4 | 78.2 | 72.3 | 6,343 |
| WHITE | 29.2 | 67.6 | 61.6 | 6,903 |
| OTHER | 15.1 | 39.6 | 34.3 | 134 |
| **CLIENTS BY AGE** | | | | |
| AGE GROUP 0- 5 YRS | 17.7 | 57.5 | 48.5 | 3,883 |
| AGE GROUP 6-12 YRS | 33.5 | 73.2 | 67.7 | 4,745 |
| AGE GROUP 13-15 YRS | 42.7 | 78.0 | 73.4 | 2,364 |
| AGE GROUP 16-18 YRS | 53.9 | 87.8 | 84.0 | 2,109 |
| AGE GROUP 19+  YRS | 86.5 | 99.6 | 99.6 | 279 |
| **CLIENTS W/ GOAL OF ADOPTION BY RACE** | | | | |
| BLACK | 46.4 | 91.9 | 88.4 | 1,798 |
| WHITE | 36.4 | 89.9 | 85.2 | 1,591 |
| OTHER | 18.0 | 56.1 | 46.3 | 41 |
| **CLIENTS W/ GOAL OF ADOPTION BY AGE** | | | | |
| AGE GROUP 0- 5 YRS | 26.2 | 85.0 | 77.9 | 1,170 |
| AGE GROUP 6-12 YRS | 46.4 | 93.4 | 90.7 | 1,701 |
| AGE GROUP 13-15 YRS | 54.5 | 93.4 | 90.9 | 427 |
| AGE GROUP 16-18 YRS | 71.5 | 93.9 | 93.1 | 131 |
| AGE GROUP 19+  YRS | 17.4 | 100.0 | 100.0 | 1 |
| **PERM COMMIT CLIENTS BY RACE** | | | | |
| BLACK | 72.5 | 97.3 | 96.3 | 1,337 |
| WHITE | 57.2 | 96.5 | 93.6 | 1,104 |
| OTHER | 15.4 | 46.2 | 38.5 | 13 |
| **PERM COMMIT CLIENTS BY AGE** | | | | |
| AGE GROUP 0- 5 YRS | 30.9 | 91.1 | 86.2 | 463 |
| AGE GROUP 6-12 YRS | 59.8 | 97.1 | 96.2 | 931 |
| AGE GROUP 13-15 YRS | 75.8 | 98.5 | 97.2 | 529 |
| AGE GROUP 16-18 YRS | 91.7 | 98.6 | 96.8 | 434 |
| AGE GROUP 19+  YRS | 106.4 | 100.0 | 100.0 | 97 |
| **PERM COMMT & ADPT CLIENTS BY RACE** | | | | |
| BLACK | 57.7 | 96.4 | 95.7 | 788 |
| WHITE | 45.8 | 95.8 | 92.0 | 683 |
| OTHER | 15.4 | 46.2 | 38.5 | 13 |
| **PERM COMMT & ADPT CLIENTS BY AGE** | | | | |
| AGE GROUP 0- 5 YRS | 30.9 | 91.4 | 86.4 | 420 |
| AGE GROUP 6-12 YRS | 56.1 | 97.3 | 96.5 | 736 |
| AGE GROUP 13-15 YRS | 65.5 | 97.9 | 96.7 | 239 |
| AGE GROUP 16-18 YRS | 88.2 | 95.7 | 94.2 | 69 |
| AGE GROUP 19+  YRS | 0.0 | 0.0 | 0.0 | 0 |
| **ALL CLIENTS** | 34.9 | 72.3 | 66.4 | 13,380 |
| **ALL CLIENTS EXCEPT IN CUSTODY OF** | | | | |
| FOSTER PARENT & SUBSIDIZED LIVING | 34.1 | 71.8 | 65.8 | 13,121 |

Data source: Client Information System (CIS) ad hoc runs.
* ALOS  = Average Length of Stay in months calculated from the Initial Placement in
          Substitute Care Date to the As of Date in the report title.
          Averages with an N of less than 30 are considered statistically unstable.
% 12+ = Percent of clients in care whose current length of stay is 12 months or more.
% 15+ = Percent of clients in care whose current length of stay is 15 months or more.
N      = Number of clients in care for whom the average and percents are calculated.
         Includes clients with a service status of Inactive - Runaway.
Clients are unduplicated for each district and statewide.
Totals for each district will not sum to the statewide total.

Note: Community Based Care data are based on units.

**NOTE: THIS DOES NOT REPRESENT TOTAL LENGTH OF CARE,**
**BUT ONLY THE TIME SPENT IN CARE TO DATE FOR ACTIVE CLIENTS.**
**AVERAGES CAN BE GREATLY SKEWED BY A FEW OUTLYING (LONG TERM) CASES.**

J00012

# MAP OF FLORIDA

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET  00-2116

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**CIV-KING**

## I. (a) PLAINTIFFS

31 Foster Children on
behalf of themselves and
all foster children in Florida

## DEFENDANTS

Jeb Bush, as Governor
Kathleen Kearney, as Secretary
15 District Administrators

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Broward
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   Leon
(IN U.S. PLAINTIFF CASES ONLY)

**MAGISTRATE JUDGE
O'SULLIVAN**

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
GIEVERS, P.A.
524 E. College Avenue, #2
Tallahassee, FL 32301

ATTORNEYS (IF KNOWN)
Not known

**(d)** CIRCLE COUNTY WHERE ACTION AROSE: DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION   (PLACE AN 'X' IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT   (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | B☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | B☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury — Product Liability | B☐ 630 Liquor Laws | | B☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 640 R.R. & Truck | **A PROPERTY RIGHTS** | ☐ 460 Deportation |
| B☐ 151 Medicare Act | | | B☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | B☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **A LABOR** | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | B☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights | B☐ 540 Mandamus & Other | | A☐ 871 IRS — Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | A OR B |
| | | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION   (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

42 U.S.C. §1983 This is an action on behalf of Florida's foster children for the declaratory and injunctive relief necessary to protect them from further harm arising from violations of their due process rights.

LENGTH OF TRIAL via 6 days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION** ☒ UNDER F.R.C.P. 23

DEMAND $ N/A

CHECK YES only if demanded in complaint
JURY DEMAND:   ☐ YES   ☒ NO

## VIII. RELATED CASE(S) IF ANY   (See instructions):

JUDGE  Moreno

DOCKET NUMBER  98-7137

DATE
6/13/00

SIGNATURE OF ATTORNEY OF RECORD
_(signature)_