# UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA
### Miami division

**FOSTER CHILDREN BONNIE L.,**
et al.,

               Plaintiffs

**v.**                                 Case Number: 00-2116-CIV MORENO

**JEB BUSH,** et al.,

               Defendants

_____/

## DEFENDANTS' MOTION TO DISMISS
## SELECTED CLAIMS FOR LACK OF STANDING

The defendants move to dismiss numerous claims because the named plaintiffs lack standing to assert them.

When the court completes the complex standing analysis required by this shotgun amended complaint that it must do before certifying a class — and before ruling on the defendants' motion to dismiss — it will see that most of the named plaintiffs lack standing to assert all but a handful of the claims raised in the amended complaint. Of the 51 discrete, separate alleged bad acts underlying the six-count, 113-page amended complaint, these named plaintiffs have not alleged they suffered — or are at a reasonable, immediate risk of suffering — actual harm as a result of each of those bad acts. So the court must dismiss those plaintiffs who have no standing and the claims based on bad acts for which there is no representative plaintiff.

The result of such an exercise will be a narrower and more manageable lawsuit that focuses on the plaintiffs' core claims.

Because a determination of standing of named plaintiffs is a prerequisite to class certification, the defendants request this motion be set for oral argument with the motion on class certification on Aug. 28.

## MEMORANDUM OF LAW

### I.    Basic standing principles.

To have standing to sue in federal court, a plaintiff must show that she has suffered an injury in fact (that is not merely speculative or conjectural) traceable to the defendants' actions, and for which the court is able to supply an adequate remedy. Church v. City of Huntsville, 30 F.3d 1332, 1335 (11th Cir. 1994).

Standing is an absolute prerequisite to the exercise of federal judicial power. It is a core constitutional requirement underlying the court's ability to exercise judicial power. Wehunt v. Ledbetter, 875 F.2d 1558, 1566-1567 (11th Cir. 1989)[1]. The Supreme Court refers to standing as the "threshold requirement imposed by Art. III of the Constitution". O'Shea v. Littleton, 414 U.S. 488, 493, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974).

The standing requirement is not some pleading technicality, but must be satisfied at all stages of the litigation, right through to judgment. Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 2136, 112 L.Ed.2d 351 (1992); Church v. City of Huntsville, 30 F.3d 1332 (11th Cir. 1994) (order

---

[1] "There is a core constitutional requirement that a plaintiff allege some actual or threatened injury that is fairly traceable to the defendant and can be remedied by an order directed against the defendant."

granting plaintiffs' motion for preliminary injunction reversed because named class plaintiffs lacked standing to seek such relief).

Ordinarily, plaintiffs cannot assert the interests of third parties, but Rule 23 provides a mechanism by which plaintiffs can assert the rights of a class. However, in doing so, the named class plaintiffs are not relieved of their obligation to meet Article III's case or controversy requirement. General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982)[2]; Church v. City of Huntsville, 30 F.3d at 1340-1341; Cuban American Bar Association v. Christopher, 43 F.3d 1412, 1423 (11th Cir. 1995); Jackson v. Okalossa County, Florida, 21 F.3d 1531, 1536-1537 (11th Cir. 1994).

This means that each claim must be separately analyzed "and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to the claim." Griffin v. Dugger, 823 F.2d 1476, 1583 (11th Cir. 1987). See also Lewis v. Casey, 116 S.Ct. 2174, 2183 (1996); Church v. City of Huntsville, 30 F.3d at 1340[3].

By claim, the courts do not mean some general legal claim, but whether the plaintiff has been harmed from the **precise bad act** giving rise to the claim. Prado-Steiman v. Bush, 221 F.3d 1266, 1279-1280 (11th Cir. 2000); Murray v. Auslander , 224 F.3d 807 (11th Cir. 2001); Shotz v. Cates, 2001 WL 76514 (11th Cir. July 9, 2001).

---

[2] "We have repeatedly held that 'a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.'"

[3] "Thus, unless the plaintiffs have alleged that one of the named plaintiffs is in real and immediate danger of being personally injured by the City's enforcement of its building code and zoning ordinance, the plaintiff class lacks standing to challenge the alleged City practice, even if the persons described in the class definition would have standing themselves to sue." Church, 30 F.3d at 1340, internal quotes omitted.

To obtain injunctive relief, a plaintiff must allege a real, imminent threat of **future** harm from specific bad acts, not merely past harm. Shotz v. Cates, 2001 WL 76514 (11th Cir. 2001) (allegations in ADA case of past discrimination do not confer standing).

Thesee essential Article III requirements do not change when plaintiffs challenge the workings of a state system. It is not enough that the plaintiffs are in or subject to a state system. They must allege and prove that **each challeged bad act** hurts them personally. The court cannot assume that merely because the plaintiffs are in the system that they are affected by all its alleged faults. See e.g., LaMarca v. Turner, 995 F.2d 1526, 1538-1539 (11th Cir. 1993) ("The wrong in Eighth Amendment cases is the deliberate indifference to a constitutionally infirm condition; that wrong must, in turn have been the proximate cause of the Plaintiff's injuries . . ."); Doe v. Sullivan County, 956 F.2d 545, 550 (6th Cir.) cert. denied, 113 S.Ct. 187 (1992) (offensive conditions did not violate constitutional rights absent proof that they proximately caused an injury); Saladin v. City of Milledgeville, 812 F.2d 687, 690 (11th Cir. 1987) (litigant must show that he personally suffered actual or prospective injury); McKinney v. U.S. Department of Treasury, 799 F.2d 1544, 1549 (Fed. Cir. 1986) (litigant must show that he personally suffered some actual or threatened injury as a result of defendants' putatively illegal conduct).

In summary, a plaintiff cannot rely on conclusory, general allegations. He or she must allege **specific concrete facts** demonstrating personal injury or the immediate threat of personal injury. Cone Corp. v. Florida Department of Transportation, 921 F.2d 1190, 1204-1205 (11th Cir. 1991); Municipal Utilities Board of Albertaville v. Alabama Power Co., 934 F.2d 1493, 1501 (11th Cir.

1991) ("Conclusory allegations 'will not survive a motion to dismiss if not supported by **facts constituting a legitimate claim for relief**,'" emphasis added).

## II.   There are no named plaintiffs harmed by most of the bad acts alleged in the amended complaint.

These standing principles impose a heavy burden on the court. The court must parse the plaintiffs' amended complaint, identify **each alleged bad act** and determine if there is a named plaintiff alleging to be personally harmed — or at imminent risk of harm — by the alleged bad act.

Given the shotgun nature of the plaintiffs' amended complaint, this is no easy task. But when the court completes the work, it will find that there are no named plaintiffs harmed by most of the bad acts alleged in the amended complaint. When the analytical dust subsides, only a handful of actionable bad acts will remain.

The amended complaint is a classic shotgun pleading. It is a rambling, disjointed document chock full of irrelevant editorial comments obviously intended to inflame the reader or to score PR points. Within this conglomeration, the plaintiffs allege six causes of action arising from dozens of discrete, separate bad acts — exactly the kind of complaint the court of appeals deplores. See e.g., Beckwith v. City of Daytona Beach Shores, Fla., 58 F.3d 1554, 1567 (11th Cir. 1995) ("The resulting difficulty in sorting through allegations almost drowns a meritorious claim in a sea of marginal ones."). The resulting jumble deprives both the court and the defendants of the fair notice of the claims that they are entitled to under the civil rules. Amey Inc. v. Gult Abstract & Title Inc., 758 F.2d 1486, 1500 (11th Cir. 1985).

Our analysis of the amended complaint turns up a total of 51 alleged bad acts. These bad acts are independent of each other. They involve different conduct and will necessarily require different proof. To proceed to trial as a class action, the court must determine if there is a named plaintiff harmed by each alleged bad act, and then it must certify **a separate subclass** for each independent bad act for which separate proof is required. Prado-Steiman v. Bush, 224 F.3d at 1281-1282.

There are:

- 33 alleged bad acts in count 1, substantive due process.
- 9 alleged bad acts in count 2, procedural due process.
- 2 alleged bad acts in count 3 denial of sibling visitation and sibling separation in foster care.
- 3 alleged bad acts in count 4, for violations of the Adoption and Safe Families Act.
- 1 alleged bad act in count 5, the EPSDT Medicaid claim.
- 3 alleged bad acts in count 6, the racial discrimination claim.

To help the court sort through the wreckage of the amended complaint, we have conducted an extensive standing analysis as to each named plaintiff and his or her connection with each alleged bad act. The length and complexity of that analysis precludes setting it out prose style in this memorandum. So instead, we have put the analysis in chart form, which is attached as exhibit 1 to this motion.

For the court's convenience, we list independently below the claims on which the plaintiffs have standing.

### Claims on which Plaintiffs have Standing

| CLAIM | REPRESENTATIVE PLAINTIFF |
|---|---|
| Substantive Due Process | |

| CLAIM | REPRESENTATIVE PLAINTIFF |
|---|---|
| Pattern/practice of failing to provide medical care for acute, chronic or congenital conditions or with treatment prescribed by a physician. [73-74] | Possibly Reggie B. |
| Pattern/practice of retaining children in foster care for longer periods than is necessary or appropriate. [78] | Laurie S., Lillie S., Reggie B., Rebecca B., Karina, Bonnie L. (But Bonnie L. will age out of the foster care system in October 2001 and her claims will become moot if the court fails to certify a class beforehand.) |
| Pattern/practice of making decisions concerning post-18 foster care services in arbitrary, capricious manner and are fundamentally unfair. [84-87] | Melinda and Leslie F. |
| **Procedural Due Process** ||
| Failure to provide foster care benefits after age 18. [90] | Leslie F., Melinda |
| Lack of procedure for applying for benefits after 18th birthday. [91] | Leslie F., Melinda |
| **Sibling Visitation/separation** ||
| Pattern/practice of separating siblings. Lack of sibling visitation. [95] | Tammy G., Laurie S. Lillie S., Leanne G., Elaine R. |
| **Adoption and Safe Families Act** ||
| Routinely failing to initiate termination of parental rights within 22 months. [98] | Karina |
| **EPSDT** ||
| Pattern/practice of failing to ensure that Ps get general physical exams and needed follow up treatment. [100] | Possibly Reggie B. |

| CLAIM | REPRESENTATIVE PLAINTIFF |
|---|---|
| **Intentional Racial Discrimination** | |
| Moving from one placement to another; timing and "tenacity" with which Ds pursue permanent families; identification of appropriate permanent family. [102] | Laurie S., Lillie S., Tammy G., Leanne G., Karina. |

Thus, these are the only claims which plaintiffs have standing to raise. They are the only ones on which a named plaintiff has alleged he or she is **personally** harmed.

The court should eliminate all other claims from consideration, and then move on to determine whether the surviving claims state causes of action at all. Then the court can appropriately take the final step to class certification, including defining appropriate subclasses based on the discrete bad acts alleged. Because each of the claims on which the plaintiffs have standing is a discrete bad act requiring separate proof, the court will have to certify a subclass for each one.

## CONCLUSION

For these reasons, the court should grant the motion.

RESPECTFULLY SUBMITTED,

**ROBERT A. BUTTERWORTH**
Attorney General

**JASON VAIL**
Florida Bar no. 298824

Assistant Attorney General
Office of the Attorney General
PL-01, The Capitol
Tallahassee, Florida  32399
Tel: (850) 414-3300
Fax: (850) 488-4872

Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served by U.S. Mail on the individuals named below on the _Tenth_ day of July, 2001

Karen A. Gievers, Esq.
Gievers P.A.
524 E. College Ave Ste 2
Tallahassee, FL 32301-2529

Theodore Babbitt, Esq.
Babbitt, Johnson, & Osborne, P.A.
P.O. Box 024426
West Palm Beach, FL 33409,

John B. Ostrow, Esq.
John B. Ostrow, P.A.
Miami Center Building, Suite 1380
201 S. Biscayne Blvd.
Miami, FL 33131

JASON VAIL

C:\WPDOCS\Foster kids\motion dis standing.wpd

# STANDING ANALYSIS OF PLAINTIFFS' CLAIMS

## INTRODUCTORY COMMENTS

The plaintiffs allege at least 51 "bad acts" common to the class. These bad acts support different claims of injury. Each of these alleged bad acts arises from different, separate behavior. Proving each bad act will require separate proof. Within each count, there are the following separate bad acts alleged.

Count 1    33

Count 2    9

Count 3    2

Count 4    3

Count 5    1

Count 6    3

DOBs for named plaintiffs who have reached 18, other than Leslie F. and Melinda, are:

- Karina:       8/14/83

- Sandra M.    8/9/83

- Hugh H.      4/16/83

- Paul B.      2/22/83

One other plaintiff, Bonnie L., turns 18 on Oct. 21, 2001

The following named plaintiffs have been adopted:

- Jay and Candice D.

The following named plaintiffs have been returned to their mothers by state court order:

- Matthew I.

- Cathy W.

Tanya M. is a runaway and not in the state's physical custody.

Note: Numbers in brackets in the following chart indicate references to page numbers in the amended complaint.

1

Exhibit 1

# CLAIM COMPARISON ANALYSIS

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| | | **COUNT 1, SUBSTANTIVE DUE PROCESS** | |
| Pattern and practice of not timely and properly moving children to permanency [62] | John J [44] | Past harm only. | NONE |
| Pattern/practice of placing children in overcrowded foster facilities. [63] | Reggie B. [6] Tanya M. [21, 23], Matthew I. [27], John J [44] | Reggie, Tanya M., Matthew I., John J — Past harm only alleged. **Reggie** alleges a single instance when he was placed in an "overcrowded" group home. [6] **Tanya** alleges only a single instance of placement in an "overcrowded" home apparently in 1998. [2] **Matthew** I alleged a single placement in an allegedly "overcrowded" home beginning in 1999 and ending in 2000. [27-29] **John** J alleged he was place for 12 months in an "overcrowded" home having up to 10 children [44] No allegation that overcrowding actually caused the deprivation of some other protected right or interest. See Rhodes v. Chapman, 101 S.Ct. 2392, 2400 (1981) (prison overcrowding is not per se constitutional; some identifiable, actionable harm must flow from overcrowding such as "deprivations of essential food, medical care, or sanitation.") | NONE  Matthew I. returned to mother. |

2

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| | | **COUNT 1, SUBSTANTIVE DUE PROCESS** | |
| Routinely failing to screen, oversee, monitor and visit foster and preadoptive homes and shelter facilities. [62] | Alleged at 63: Tanya M., Hugh S., Sandra M., Laurie S., Lillie S., Leanne G., Paul B., Matthew I., Rachel, Reggie B., John J., Leanne G., Tammy G., Cathy W., Melinda and Karina, Leslie F., Larissa | For all plaintiffs except Larissa. No specific allegations about failure screen/monitor/oversee/visit a particular placement which caused any harm. Conclusory allegations only.<br><br>Larissa alleges a single instance of failure to *screen* a foster home, where she was injured. [43] Allegation of past harm only. She does not allege failures to oversee, monitor, visit homes.<br><br>Melinda, Leslie F., Paul B., Hugh S.: aged out<br><br>Matthew I. and Cathy W.: returned to mother. | NONE |
| Pattern and practice of knowingly placing and retaining plaintiffs in foster care placements that were dangerous, abusive, neglectful, overcrowded, or wholly inappropriate to and incapable of meeting the children's individual needs. [63] | Alleged at 63: Tanya M., Hugh S., Sandra M., Laurie S. and Lillie S., Elaine R., Paul B., Matthew I., Rachel, Reggie B., John J., Leanne G., Tammy G., Cathy W., Melinda and Karina, Sandra M., Leslie F. | No specific allegation by any named plaintiff that defendants *knowingly* put children in a dangerous or otherwise inappropriate foster home. If there is any allegation of harm, it is past harm only.<br><br>Laurie and Lillie S.: DCF allegedly ignored complaints about a foster home. The complaints were that it housed teenage girls known to engage in sexual conduct. At the time Laurie and Lillie were apparently eight and six. DCF put children there anyway. There is no allegation that the girls were at risk of abuse or neglect because of this placement. Moreover, the children bonded with the foster mother who wanted to adopt them, but they were moved out after five years there, an event which was very traumatic to them. Thus, no harm alleged, and if there is harm it is past harm. [10]<br><br>Hugh S., Leslie F., Melinda, Paul B.: aged out.<br><br>Matthew I and Cathy W.: returned to mother. | NONE |

3

## COUNT 1, SUBSTANTIVE DUE PROCESS

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| Pattern/practice of ignoring or inappropriately responding to complaints about foster homes, shelters and preadoptive placements. [63] | Alleged at 63: Tanya M., Laurie S., Lillie S., Matthew I., Tammy G., John J., Leslie F. | Lillie and Laurie S.: no harm alleged as a result of the failure to respond to the complaints. [10]  John J.: alleges that DCF ignored hotline calls about child abuse, "exonerated the foster parents and kept the home open." But he fails to allege that he suffered as a result of this alleged exoneration and the fact that the home stayed open. Although he alleges a general "failure to protect," he does not link this failure to ignoring complaints about the foster home. [44]  Matthew I.: returned to mother.  Leslie F.: aged out.  Tanya M.: allegedly complained to caseworker about one foster home, but moved out of there. [22]  Tammy G.: alleges inadequate investigation of alleged abuse, not that complaint was ignored or inappropriately responded to. [35] | NONE |
| Contributing factor for placement in dangerous homes is large caseworker turnover, lack of adequate and meaningful supervision, training and management of caseworkers. [64] | | | NONE |

4

## COUNT 1, SUBSTANTIVE DUE PROCESS

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| As a result of excessive workloads, caseworkers do not visit Ps with sufficient frequency to assure safety. [65] | Alleged at 65: Jay D. and Candice D. | Jay and Candice D.: adopted<br><br>No allegation that they were harmed because of excessive caseloads. [26-27]<br><br>No allegations that these plaintiffs were harmed in any way because of excessive caseworker caseloads or lack of visitation by caseworkers. [26-27] | NONE |
| Pattern/practice of putting Ps in shelters because of unavailability of foster home that will accept the child. [66] | Alleged at 66: Leslie F. [15] , Sandra M. [20], Rachel C. [40], Paul B. [38], Hugh S. [30], Tammy G. | Leslie F., Hugh S., Paul B., aged out.<br><br>Sandra M.: past harm only. Allegation that only once placed in shelter, from July 1997 to an undisclosed date in 1997 but one certainly well before October. [20]<br><br>Tammy G.: no allegations of shelter placement. See pp. 35-36.<br><br>Leslie F. alleged two placements in a shelter, one in 1998-99 and another in 1999. [14-15]<br><br>Paul B. alleged a one-time placement in a shelter at an undisclosed time [38]<br><br>Hugh S. alleged a one-time placement in a shelter during July 2000 [30]<br><br>Rachel C. alleged she remains in shelter [40] However, she fails to allege any specific harm arising from shelter placement. See Rhodes v. Chapman, 101 S.Ct. 2392, 2400 (1981) (prison overcrowding is not per se constitutional; some identifiable, actionable harm must flow from overcrowding such as "deprivations of essential food, medical care, or sanitation".) | NONE |

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| | | COUNT 1, SUBSTANTIVE DUE PROCESS | |
| Failure to develop array of foster care settings in sufficient numbers to ensure safe, secure placement [66] | | | NONE |

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| | | **COUNT 1, SUBSTANTIVE DUE PROCESS** | |
| Lack of foster homes and other placements for teens causing dangerous and inappropriate placements [67] | Alleged at 67: Hugh S., Paul B., Rachel C., Sandra M., Tanya M., Leslie F., Melinda, Karina | Hugh S., Paul B., Leslie F., Melinda aged out. Rachel C.: no allegation that lack of foster homes caused her to be placed in shelter. [41] Tanya M.: no allegation that lack of foster homes caused her to be put in dangerous foster home [21-24] Karina: no allegation that lack of foster homes cause her to be put in dangerous foster home [45-49] Paul B.: no allegation that lack of foster homes cause him to be put in a dangerous or inappropriate placement. Allegation is a general one that failure to develop an array of homes increases the chance that any child "will be placed with foster parents incapable of caring for them." [38] Hugh S.: no allegation that lack of foster homes cause him to be put in a dangerous or inappropriate placement [29-30] Sandra M.: no allegation that lack of foster homes cause her to be put in a dangerous or inappropriate placement [18-21] Leslie F.: no allegation that lack of foster homes cause her to be put in a dangerous or inappropriate placement. Allegation is a general one that failure to develop an array of homes increases the chance that any child "will be placed with foster parents incapable of caring for them." This allegation is made in connection with the plaintiffs' race discrimination claims. [13-14] | NONE |

7

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| | | COUNT 1, SUBSTANTIVE DUE PROCESS | |
| Failure to recruit, develop, maintain a sufficient number of foster homes for large sibling groups. [67] | Alleged at 67: Tanya M., Reggie B., Rebecca B., Laurie S., Lillie S., Tammy G., Leanne G., Leslie F., Elaine R., Melinda, Karina, Hugh S. | Hugh S., Leslie F., Melinda aged out. Tanya M.: alleges only a failure to place in same home as her siblings. [23] Reggie and Rebecca B.: allege only that they are separated. As a couple, they do not constitute a "large sibling group." [7] Leanne and Tammy G.: allege sibling separation and denial of sibling visitation only. [36] Elaine R.: alleges only separation from siblings and lack of sibling contact. Does not allege how many siblings or whether they constitute a "large sibling group." [37-38] Karina: As part of a sibling couple, she is not part of a "large sibling group." Alleges only separation from her sister. [46] Laurie and Lillie S.: they allege they have "several siblings" but they don't allege they are part of a "large sibling group." [9] No allegation they were denied visitation because of a failure to recruit/develop a sufficient number of foster homes capable of handling "large sibling groups." | NONE |
| Placement in dangerous, abusive, overcrowded, neglectful or inappropriate placements; failure to address or remedy that practice. [67] | | | NONE |

8

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| | | COUNT 1, SUBSTANTIVE DUE PROCESS | |
| Lack of out-of-home counselors and supervisors to supervise and serve children in placements. Workload precludes adequate supervision of children. [68] | | | NONE |

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| | | COUNT 1, SUBSTANTIVE DUE PROCESS | |
| Pattern/practice of moving children repeatedly and in contravention of professional judgment, deliberate indifference to safe, stable placement. Failure to exercise professional judgment resulting in placement in dangerous, neglectful, overcrowded placement. Multiple placements. Pattern/practice of multiple, unwarranted placements. [69-70] | Alleged at 69-70. Tanya M., Hugh S., Sandra M, Laurie S., Lillie S., Reggie B., Tammy G., Paul B., Leslie F., Jay D., Candice D., Melinda and Karina, Bonnie L. | Hugh S., Paul B., Melinda aged out. | NONE |
| | | Jay and Candice D. adopted. | |
| | | Tanya M. placed in "several" different "unsuitable" foster homes. [21] Past harm only. (But she is a runaway and not in the state's physical custody. Exhibit 2 to motion to dismiss for mootness. Since she is not in the state's physical custody, she has no actionable substantive due process rights. D.W. v. Rogers, 113 F.3d 1214 (11th Cir. 1997).) | |
| | | Sandra M. placed in "several different" foster homes over two-year period [19] Past harm only. | |
| | | Laurie S. and Lillie S.: no allegation of multiple placements. [8-12] | |
| | | Reggie B.: placement with aunt pending. [7] | |
| | | Tammy G.: no allegations of multiple placements. [35-37] | |
| | | Karina: no allegations of multiple placements. [45-49] | |
| | | Bonnie L.: no allegations of multiple placements [2-5]. Also, placement with natural mother pending. [5] | |

10

## COUNT 1, SUBSTANTIVE DUE PROCESS

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| Lack of mechanism for locating settings appropriate for each child contravenes professional standards and precludes the exercise of professional judgment; lack of mechanism for locating vacant foster care beds, matching children to the beds, expeditiously placing child. Deliberate indifference to need to find appropriate placement. [70] | Alleged at 70: Paul B., Tanya M., Cathy W., Sandra M., Rachel C., Laurie S., Lillie S., Hugh S., Reggie B., Leslie F. | Paul B., Leslie F., Hugh S.: aged out. Cathy W.: returned home. Sandra M. does not allege she was put in an inappropriate placement. [18-21] She alleges only harm from "failure to provide her with a safe and stable foster care placement or an appropriate and stable permanent family." [21] Rachel C. alleges she is in an inappropriate shelter placement. She does not allege she is there because of the lack of any mechanism to find an appropriate placement. [41] Laurie and Lillie S.: allege only failure to recruit foster homes for large sibling groups and to locate uncle early on who is willing to adopt. [10-11] Reggie B.: alleges one time past harm from placement in foster home and the failure to timely locate a relative who agreed to take him. [6-7] Tanya M.: no allegation that lack of mechanisms for locating foster homes caused her harm. [21-24] | NONE |
| Removing child from foster home upon foster parents' demand [70-71] | Laurie and Lillie S. [10] Reggie B. [6] | No allegation that they were harmed by removal upon demand of foster parenet. | NONE |

11

## COUNT 1. SUBSTANTIVE DUE PROCESS

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| Failing to prepare foster parents to deal with the predictable behavior of children placed in their homes. Failing to support foster parents with services and other types of help to make it possible for the child to be maintained in the foster home. Deliberate indifference. [71] | Sandra M., Tanya M., Reggie B., Leslie F. | Leslie F.: aged out.<br><br>Tanya M. [21-24], Reggie B. [6-8]: no such particular allegations.<br><br>Sandra M.: alleges that adoptive mother had problems with parenting skills, but not that the adoptive mother was not unprepared to deal with Sandra's behavior or that the defendants failed to provide requested skills training to the adoptive mother. [19-20] | NONE |
| Pattern/practice of failing to identify relatives competent and willing to take children [72] | Reggie B. [6-7]; Laurie and Lillie S [10-11]; John J. [44] | Allegations of past harm only. | NONE |

12

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| | | **COUNT 1, SUBSTANTIVE DUE PROCESS** | |
| Ignoring or actively discouraging possible relative placements, instead putting children into unsafe homes. 72 | Alleged at 72: Laurie S., Lillie S., Reggie B., Rebecca B., John J., Bonnie L. | No specific factual allegations that defendants "ignore or actively discourage" possible relative placements as to any plaintiff or that they are likely to do so in the future. | NONE |
| | | John J.: alleged only failure to search for suitable relative placement. Past harm only. [44] | |
| | | Laurie and Lillie S.: allege only failure to locate uncle early on who is willing to adopt. [10-11] | |
| | | Reggie and Rebecca B.: allege only a timely failure to find a relative who might adopt them. Alleges that home study is underway for that relative. [7] | |
| | | Bonnie L.: DCF "initially objected to [Bonnie] even having contact with [her] biological mother" but finally agreed to the biological mother's adoption, although it is not yet final. [5] | |
| Pattern/practice of excluding from the decision-making process concerning individual children, the foster children themselves and some adults who are deeply involved with the children and critically important information about them. [73] | Jay D., Candice D., Melinda and Bonnie L. 73 | Jay and Candice D.: adopted. Also, the specific allegation is that the defendants excluded *group home staff* from case planning meetings, not that Jay and Candice were excluded. Finally, no harm alleged from such exclusions. [26] | NONE |
| | | Bonnie L.: no particular allegation that she is excluded from the decision making process. | |
| | | Melinda: aged out. | |

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| | | **COUNT 1, SUBSTANTIVE DUE PROCESS** | |
| Pattern/practice of failing to provide medical care for acute, chronic or congenital conditions or with treatment prescribed by a physician. [73-74] | Matthew I., Reggie B., Leanne G. | Matthew I.: returned to mother. Allegations concern past harm only. [28-29]<br><br>Reggie G.: alleges cleft palate that "defendants have failed to address." The specific allegation is the failure to make several scheduled appointments. [7]<br><br>Leanne G.: past harm only. Alleged that *one time* foster mother refused to take her for treatment, so DCF worker did so instead. No allegation otherwise of a failure to provide medical care [32]<br><br>No allegations that any named plaintiff failed to get treatment prescribed by a physician<br><br>No named plaintiff alleged an acute or chronic untreated medical condition | Possibly Reggie B |
| Pattern/practice of using psychotropic medications to control children rather than for mental health treatment. [74] | Melinda and Karina 74 | Melinda: aged out.<br><br>Karina alleged. "Their minds have been damaged by years of psychotropic medications administered for nontherapeutic reasons with defendant's approval for the convenience of their caretakers." [45] No allegation that she is presently receiving psychotropics for nontherapeutic reasons or that circumstances are such that she is in immediate danger of receiving such medications. | NONE |

14

## COUNT 1, SUBSTANTIVE DUE PROCESS

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| Systematically depriving children of their access to education as a consequence of frequent movement. Failure to monitor education performance. Failure to provide educational assistance. Failure to provide special education needs. Deliberate indifference. [75] | Alleged at 76: Hugh S., Paul B., Leslie F., Melinda, Karina | Hugh S., Paul B., Leslie F., Melinda, Karina does not allege denial of education because of frequent movement (or frequent movement at all); failure to monitor educational performance or to provide for special education needs. Fails to allege that she has any special education needs. [45-49] | NONE |
| Pattern/practice of failing to provide adequate clothing or clothing allowance. [76] | Alleged at 76: Hugh S. | Hugh S.: aged out. His allegation concerns a one-time event and does not state facts that demonstrate an immediate risk of future harm from such a practice. [30] | NONE |
| Pattern/practice of attempting to reunify foster children with biological families when doing so is obviously dangerous to the child. Ds obliged not to return child to natural parents if doing so may harm the child. [76] | Tanya M. [23] | Tanya M.: alleged that a reunification with her parents failed in May 2000. [23] Past harm only. | NONE |
| Pattern/practice of retaining children in foster care for longer periods than is necessary or appropriate [78] | Laurie S., and Lillie S., Sandra M., Hugh S., Reggie B., Rebecca B., Melinda and Karina, Bonnie L., Jay D. and Candice D., Leslie F. | Hugh S., Melinda, Leslie F.: aged out. Jay and Candice F.: adopted. | Laurie S., Lillie S., Reggie B., Rebecca B., Karina, Bonnie L. |

## COUNT 1, SUBSTANTIVE DUE PROCESS

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| Pattern/practice of failing to provide the services needed by the biological families of children out-of-home care, delaying reunification even where it is appropriate. [80] | | | NONE |
| Pattern/practice of too quickly giving up on finding adoptive families for children who cannot be returned to their biological families or placed permanently with a relative [81] | Alleged at 81: Bonnie L. and Sandra M. | Sandra M.: no allegation that defendants delayed in finding her an adoptive home because of focus on placement with a relative. No allegation that defendants gave up too easily in finding an adoptive home. She was adopted and allegedly removed from that home. [18-21]<br><br>Bonnie L.: same. She alleges also that she is scheduled to be adopted by her biological mother after her adoptive placement failed. [3-5] | NONE |
| Failing to provide services to biological family upon children' removal, delaying reunification. [80] | | | NONE |
| Lack of sufficient lawyers and legal support staff to terminate parental rights. [83] | | | NONE |
| Pattern/practice of making decisions concerning post-18 foster care services in arbitrary, capricious manner and are fundamentally unfair. 84-87 | Melinda and Leslie F. [85, 86] | | Melinda and Leslie F. |

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| Lack of quality control/quality assurance mechanism. [88] | | | NONE |
| Misuse of doctrine of confidentiality of records to shield Ds and hide the deficient operation of the foster care system. [87] | | | NONE |

**COUNT 1, SUBSTANTIVE DUE PROCESS**

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| Lack of caseworker supervision with at least monthly home visits. [89] | Jay and Candice D. [26] | Jay and Candice D.: adopted. No allegations that these plaintiffs were harmed in any way because lack of visitation by caseworkers. [26-27] | NONE |
| Lack of caseworker supervision in shelter, should have two contacts per week, at least one face to face. [89] | Jay and Candice D. [26] | Jay and Candice D.: adopted. No allegations that these plaintiffs were harmed in any way because lack of visitation by caseworkers. [26-27] | NONE |
| Medical care: licensed medical person shall be immediately called or child taken to hospital. [90] | | | NONE |

**COUNT 2, PROCEDURAL DUE PROCESS**

17

## COUNT 2. PROCEDURAL DUE PROCESS

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| Failure to provide foster care benefits after age 18 [90] | Leslie F., Melinda | | Leslie F., Melinda |
| Lack of procedure for applying for benefits after 18th birthday. [91] | Leslie F., Melinda | | Leslie F., Melinda |
| Failure to establish process for hearing or professional review of decisions to deny benefits. [91] | Alleged at 92. Jay D., Candice D., Matthew I., Reggie B., Leanne G., Leslie F. and Melinda | Jay and Candice D. adopted. Fails to identify any protected liberty or property interest of which they were deprived without notice and hearing. Fails to allege that hearing requested and denied

Matthew I.: returned to mother. Fails to identify any protected liberty or property interest of which he was deprived without notice and hearing. Fails to allege that hearing requested and denied.

Melinda and Leslie F.: aged out.

Reggie B.: Fails to identify any protected liberty or property interest of which he was deprived without notice and hearing. Fails to allege that hearing requested and denied.

Leanne G.: Fails to identify any protected liberty or property interest of which she was deprived without notice and hearing. Fails to allege that hearing requested and denied.

Of note: Florida has an established procedure under the state's administrative procedures act for challenging the denial of foster care benefits. See L.Y. v. Department of Health and Rehabilitative Services, 696 So. 2d 430, 432 (Fla. 4th DCA 1997) (concerning denial of independent living services). | NONE |

18

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| | | COUNT 2, PROCEDURAL DUE PROCESS | |
| Pattern/practice of failing to notify children of judicial review hearings and administrative review and case planning conferences and of failing to provide transportation and other services children need to be able to attend and participate in such hearings and conferences [94] | | | NONE |
| Lack of standards for determining when child should participate in case planning [94] | | | NONE |

19

## COUNT 3, FIRST, NINTH AND FOURTEENTH AMENDMENTS
### Sibling separation and sibling visitation

| CLAIM | REPRESENTATIVE PLAINTFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| Pattern/practice of separating siblings. Lack of sibling visitation. [95] | Alleged at 96: Tanya M., Tammy G., Laurie S. Lillie S., Leanne G., John J., Melinda, Karina, Elaine R., Leslie F. | Melinda, Leslie F.: aged out. Tanya M. is a runaway. John J.: no allegation that he has siblings. [43-45] Karina has no sibling in the foster care system. Melinda, her sister, is 18 [45] | Tammy G., Laurie S. Lillie S., Leanne G., Elaine R. |

20

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| | | **COUNT 4, ADOPTION AND SAFE FAMILIES ACT** | |
| Routinely failing to initiate termination of parental rights within 22 months [98] | Alleged at 98: Laurie S., Lillie S., Sandra M., Hugh S., Reggie B., Rebecca B., Melinda, Karina, Bonnie L. | Hugh S.: Melinda: aged out.  Laurie and Lillie S.: parental rights terminated in March 1997 (mother) and May 1999 (father). [10]  Sandra M.: alleged parental rights terminated at undisclosed time. [19]  Reggie and Rebecca B.: no allegation that parental rights not terminated [6-8]  Bonnie L.: father's parental rights terminated in 1987, biological mother gave her up for adoption and she was adopted. [3-4] B.L. was adopted but apparently the adoption failed, and she returned to foster care. [4] No allegation that defendants failed to terminate the parental rights of adoptive parents. It appears that they have because B.L. alleges she is scheduled to be adopted by her biological mother. [5] | Karina |

21

**COUNT 4, ADOPTION AND SAFE FAMILIES ACT**

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| Failing to provide services determined to be necessary for safe return of children in care. [98] | Alleged at 98: Laurie S., Lillie S., Sandra M., Hugh S., Reggie B., Rebecca B., Melinda, Karina, Bonnie L. | Hugh S., Melinda: aged out.<br><br>Laurie and Lillie S.: no allegation that services were determined to be necessary for their "safe return." [8-12]<br><br>Sandra M.: no allegation that services were determined to be necessary for her "safe return." [18-21]<br><br>Reggie and Rebecca B.: no allegation that services were determined to be necessary for their "safe return." [6-8]<br><br>Karina: no allegation that services were determined to be necessary for her "safe return." [45-49]<br><br>Bonnie L.: no allegation that services were determined to be necessary for her "safe return." [3-5] | NONE |

22

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| | | **COUNT 4. ADOPTION AND SAFE FAMILIES ACT** | |
| Failing to obtain required education and health information, review and update it, and provide record continuing this information to foster home or facility where children are placed [99] | Alleged at 99: Matthew I., Reggie B., Leanne G., Melinda, Karina | Matthew I.: returned to mother. No specific allegation that defendants failed to collect and disseminate this type of information or an allegation that he was harmed by alleged failure to do so. | NONE |
| | | Melinda: aged out. | |
| | | Reggie B.: no specific allegation that defendants failed to collect and disseminate this type of information or an allegation that he was harmed by alleged failure to do so [6-8] | |
| | | Leanne G.: no specific allegation that defendants failed to collect and disseminate this type of information or an allegation that she was harmed by alleged failure to do so [31-37] | |

23

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| | | **COUNT 5, ESPDT CLAIM (early medical screening)** | |
| Pattern/practice of failing to ensure that Ps get general physical exams and needed follow up treatment [100] | Matthew I, Reggie B. and Leanne G. 100 | Matthew I.: returned to mother. Although alleging that he as consistently "sick" with some undescribed illness and sores and scabs, this is past harm. No allegation that he has any other medical problem that would have or should have been diagnosed, and has gone untreated. Alleged that he was removed from "inadequate" foster home where he had been sick, in Feb 2000. No allegations that he faces a real, immediate threat of future harm from lack of medical care. [27-29]<br><br>Reggie B.: alleges apparent mental health problems, which are encompassed by the ME class. [6] Alleges cleft palate, alleges appointments made for the cleft palate, but appointments missed. [7] No allegation that he has any other medical problem that would have or should have been diagnosed, and has gone untreated. No allegations that he faces a real, immediate threat of future harm from lack of medical care.<br><br>Leanne G.: Alleges only that foster mother refused to take her to a physician, but a caseworker did. [32] No allegation that she has any other medical problem that would have or should have been diagnosed, and has gone untreated. No allegations that she faces a real, immediate threat of future harm from lack of medical care. | Possibly Reggie B. |

24

| CLAIM | ALLEGED REPRESENTATIVE PLAINTIFF | COMMENTS | TRULY REPRESENTATIVE PLAINTIFF |
|---|---|---|---|
| | **COUNT 6, TITLE VI**<br>**Race Discrimination** | | |
| Moving from one placement to another; timing and "tenacity" with which Ds pursue permanent families; identification of appropriate permanent family. [102] | Alleged at 102. Paul B., Leslie F., Laurie S., Lillie S., Tammy G., Leanne G., Melinda, Karina | Paul B., Leslie F., Melinda: aged out.<br><br>Karina ages out 8/14/83. | Laurie S., Lillie S., Tammy G., Leanne G. |
| Disparate impact of neutral criteria or methods of administration. [102] Includes failure to recruit foster and adoptive families, efforts to move children to permanency. [103] | | No cause of action under Title VI for disparate treatment. | NONE |

25